# Exhibit 1a

# to Defendants' Response in Opposition

# to Plaintiffs' Second Emergency

# Application for a TRO

IN THE TRIBAL COURT

OF THE COLORADO RIVER INDIAN TRIBES

PARKER, ARIZONA

2008 JAN 15 AM 9:41

| | |
|---|---|
| COLORADO RIVER INDIAN TRIBES, | ) Case No. CV-CO-2007-0100 |
| Petitioner/Plaintiff | ) |
| | ) |
| vs. | ) ORDER DENYING DEFENDANT WATER |
| | ) WHEEL RECREATIONAL AREA, INC., |
| | ) AND ROBERT JOHNSON'S MOTIONS TO |
| | ) DISMISS FOR LACK OF JURISDICTION |
| WATER WHEEL CAMP RECREATIONAL AREA, INC., ROBERT JOHNSON, and DOES 1-20, | ) |
| Respondents/Defendants. | ) |

On October 1, 2007, the Plaintiff, COLORADO RIVER INDIAN TRIBES, (Plaintiff) filed a Petition for Eviction; Complaint for Damages in Contract and Tort (Eviction Complaint) against Defendants, WATER WHEEL CAMP RECREATIONAL AREA, INC., ROBERT JOHNSON, and DOES 1-20 (Defendants).

On October 19 2007, the Defendants filed a Special Appearance, Motion To Dismiss and Answer to the Eviction Complaint. Per the Motion to Dismiss, the Defendants pray that the Court dismiss the Eviction Complaint.

In their Motion To Dismiss, the Defendants make five arguments: three of which challenge the Plaintiff's "ownership" and "right to occupy" the land in question and this Court jurisdiction over them, one of which refutes this Court's

1

"personal jurisdiction" over them, and one of which claims that the United States is an a "indispensable party" to the Complaint.

After being thoroughly briefed by all parties on the five issues, the Court hereby enters its rulings as to each argument.

Defendants' first three arguments are as follows:

1. "This action must be dismissed because the land forming the basis for the lease is located in California and therefore is legally incapable of being within the exterior boundaries of the Colorado Indian Tribes Reservation."

2. "This action must be dismissed because, upon information and belief, the land forming the basis for the lease is not held in trust by the United States for the Colorado River Indian Tribes and therefore is legally incapable of being within the exterior boundaries of the Colorado Rive Indian Tribes Reservation.

3. "This action must be dismissed because the land forming the basis for the lese is otherwise not within the exterior boundaries of the Colorado River Indian Tribes Reservation.

As to the first three arguments, this Court denies the Motion to Dismiss on the grounds that the common and general rule of law, which is recognized by state and federal case law, and which this court adopts, is that a tenant who possesses property pursuant to a lease is **estopped** from challenging and contesting the landlord's title to the property (in the case of an Indian Tribe, the Tribe/landlord's title is "the right to exclusive occupancy.") This general rule bars the Defendants from challenging the Plaintiff, Colorado River Indian Tribes' right to exclusive occupancy of the land. This Court also holds that the rule bars the Defendants from advancing their arguments in the guise of a challenge to the jurisdiction of this Court. As was stated in Wendt v. Smith, "[t]his is precisely the argument that this doctrine bars: a tenant defending a suit for [eviction and] rent by challenging the landlord's right to put him into possession." Here, as in Wendt, Defendants cannot avoid tribal court jurisdiction by arguing that the tribes do not own the property, or by challenging the trust status of the property. Defendants here are estopped from attacking this Court's jurisdiction on the

grounds that there is a defect in the Tribes' title. See Wendt v. Smith, 2003 WL 21750676, *5 (C.D. Cal. 2003) (unpublished opinion) ("a tenant in possession is estopped from contesting the landlord's title in an ejectment action."); United States v. Jorgensen, 116 F.3d 1487, 1997 WL 355849 at *1 (9th Cir. 1997) (unpublished memorandum opinion) (affirming order of ejectment and rejecting mobile home residents' argument that Indian tribe was not beneficial owner of land because "tenant in possession is estopped from contesting the landlord's title in an ejectment action"); Greenhut v. Wooden, 129 Cal.App.3d 64, 68 (1982) (reciting general rule that "tenant in possession is estopped from denying the landlord's title as it existed at the outset of the relationship"); Richardson v. Van Dolah, 429 F.2d 912, 917 (9th Cir. 1970) (tenant in peaceful possession is estopped from questioning title of his landlord); Quon v. Sanguinetti, 60 Ariz. 301, 303 (1943) ("it may be stated as the universal law that a tenant who enters upon premises under a lease may not question his landlord's title as long as he has not been evicted therefrom"); Gibbs v. Basham, 53 Ariz. 357, 364 (1939) ("a defendant in any action affecting real property, who has gone into possession thereof by virtue of a lease . . . , is estopped from denying the title of the plaintiff from whom he received possession so long as he retains that possession."); Goode v. Gaines, 145 U.S. 141, 152 (1892) ("The estoppel which prevents a tenant, who has acquired possession as such, from claiming title adversely to his landlord, does not depend on the validity of his landlord's title."); Williams v. Morris, 95 U.S. 444, 455 (1877) ("[W]henever the possession is acquired under any species of tenancy, whether the action be assumpsit, debt, covenant, or ejectment, the tenant is estopped from denying the title of the landlord."); 42 Cal. Jur. 3d (Landlord & Tenant) § 61 (1999) (estoppel applies against a tenant "holding over after an expired term" and continues "not merely to the end of the term but to the end of the tenant's possession"); McKissick v. Ashby, 98 Cal. 422, 425-426 (1893) (holdover tenant cannot challenge landlord's title); see also Tewksbury v. Magraff, 33 Cal. 237, 244-245 (1867) (same). Indeed, this rule is so commonly accepted that the Arizona Supreme Court called it "a universal law." Quon, 60 Ariz. at 303. The purpose of the rule is to "prevent a tenant from

defending a suit for rent by challenging his landlord's right to put him in possession." Wendt, 2003 WL 21750676, at *5 (quoting Richardson, 429 F.2d at 917).

The facts of this case fall squarely under this rule. Defendant Water Wheel is the Lessee under the Lease and has occupied the Property for thirty-two years pursuant to the Lease. Bert Denham, acting as President of the corporation, signed the Lease on behalf of Water Wheel in 1975, then transferred his interest in Water Wheel to Johnson in 1981. Although Defendant Johnson did not personally sign the Lease, he acquired Denham's ownership interest in Water Wheel and became President of the corporation. Now that the Tribes have brought this action to recover possession of the property, unpaid rent, and other related damages, Defendants seek to contest the Tribes' ownership of the property in order to evade this action. This they cannot do under the doctrine of estoppel. This Court does not find that any of the exceptions to the general rule argued by the Respondents/Defendants in their briefs apply here.

As an additional ground for denying the Motion to Dismiss, the Court finds the doctrine of **collateral estoppel** bars the Defendants from making the challenge. In 1974, a federal district court entered a stipulated judgment declaring that the property in question is owned by the United States in trust for the Tribes. See the United States v. Denham case. The defendant in that action, Bert Denham, is the president of Water Wheel. Denham subsequently transferred his interest in the Water Wheel corporation—and hence his interest in the lease—to Defendant Robert Johnson. Because the Defendants are in privity with Denham, the district court's judgment bars Defendants from relitigating this issue.

"Collateral estoppel is appropriate when the following conditions are met:

(1) there was a full and fair opportunity to litigate the issue in the previous action;

(2) the issue was actually litigated in that action;

(3) the issue was lost as a result of a final judgment in that action; and

(4) the person against whom collateral estoppel is asserted in the present

4

action was a party or in privity with a party in the previous action." In re Palmer, 207 F.3d 566, 568 (9th Cir. 2000); see also Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n ("Citizens"), 60 Cal.App.4th 1053, 1065 (1998) (listing conditions for collateral estoppel). In this case, all four conditions are satisfied. First, there was a full and fair opportunity to litigate the issues of ownership and trust status of the property in the Denham action. That action was commenced in 1973. The United States brought a trespass action, asserting that it owned the Property as trustee for the Colorado River Indian Tribes. Thus, the issue of Tribal ownership of the Property was clearly before the district court in Denham. Second, the ownership issue was actually litigated in that case. As part of the settlement of the case, the parties agreed to a stipulated judgment ("Judgment"), which the district court entered on March 5, 1974. The Judgment provides that the United States owns the Property in trust for the Colorado River Indian Tribes. A stipulated judgment constitutes a determination on the merits for purposes of collateral estoppel where "it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action." Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383 (9th Cir.1978); see also Citizens, 60 Cal.App.4th at 1065 ("A judgment entered . . . by consent or stipulation, is as conclusive a . . . bar as a judgment rendered after trial.") In this case, the nature and content of the Judgment clearly indicate the intent of the parties to be collaterally bound by its terms. For example, paragraph seven of the Judgment specifically prevents the Defendants from challenging in the future the United States' right to "administer, possess, and control" the Property. Additionally, the Judgment determined and decreed the parties' ownership interests in real property. The Supreme Court has repeatedly recognized that the policy reasons for applying collateral estoppel and res judicata are at their zenith in cases concerning real property. See Nevada v. United States, 463 U.S. 110, 129 n.10 (1983) ("The policies advanced by the doctrine of res judicata perhaps are at their zenith in cases concerning real property, land, and water."); Arizona v. California (Arizona II), 460 U.S. 605, 619-20 (1983) (noting that estoppel protects "'adversaries from the expense and

5

vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions'" and that "[i]n no context is this more true than with respect to rights in real property") (quoting Montana v. United States, 440 U.S. 147, 153-154 (1979)). Here, the purpose of the Judgment was to establish, once and for all, who owned the Property. Thus, the parties' manifest intent was to be bound by the Judgment. Third, the claim that the Property is not tribal land held in trust by the United States was resolved against Denham, and in favor of the United States and the Tribes, in the Denham action. Again, the Judgment decreed that the United States owns the Property in trust for the Tribes. Fourth, although neither Water Wheel nor Johnson was a defendant in the Denham action, they are in privity with Denham and are bound by the Judgment in that case. "Privity exists when there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983); see also Headwaters Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052-53 (9th Cir. 2005) (privity "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved"); Citizens, 60 Cal.App.4th at 1070 ("The concept of privity for the purposes of . . . collateral estoppel refers to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights . . . ."); Mooney, 138 Cal.App.4th at 718 (same).

    Here, it is clear that the relationship between Denham, on the one hand, and Water Wheel and Johnson, on the other, is sufficiently close to justify application of the doctrine. Denham had a strong incentive to assert and defend his interest in the Property, and thus adequately represented Defendants' interests. Moreover there is a very close relationship between all three parties: Denham incorporated Water Wheel and was its President and shareholder at the time the Judgment was entered. Johnson acquired his interest in Water Wheel—and hence his interest in the Property—from Denham, and now stands in the shoes of Denham as the corporation's President and shareholder. Even if the

6

relationships between Denham and Defendants do not constitute "traditional" privity, they do constitute privity under a broader sense.

"In the final analysis, the determination of privity depends upon the fairness of binding [a party] with the result obtained in earlier proceedings in which it did not participate." Mooney, 138 Cal.App.4th at 719 (citing Citizens, 60 Cal.App.4th at 1070). Here, not only is it fair to apply collateral estoppel to Water Wheel and Johnson, it would be unfair to the Tribes not to apply the doctrine. The only reason Defendants were granted the thirty-two year Lease that allowed them to develop and operate the Water Wheel Resort on the Property was that Denham, then President and shareholder of Water Wheel, stipulated to a judgment deciding once and for all that the Property was held in trust by the United States for the Tribes. To allow Defendants to escape the finality of this Judgment after having recouped the benefit for the Lease would be manifestly unfair.

Finally, the Court finds that the Defendants have **consented** to Tribal Court Jurisdiction by agreeing to abide by all of the Tribe's laws, including provisions providing for Tribal Court Jurisdiction over disputes involving tribal lands. In Wendt, the district court concluded that the plaintiffs in that case had **waived** any challenge to Tribal Court jurisdiction because they had entered leases with the following provision: Lessee, it's [sic] employees, guests and agents . . . hereby consent to the jurisdiction of the Chemehuevi Indian Tribe and the Tribal Court of said Tribe and/or Federal Court. Wendt, 2003 WL 21750676, at *5. The Lease between Water Wheel and the Tribes contains a very similar provision, which is binding on both Water Wheel and its agents, including Johnson. Paragraph 34 of the Lease Addendum provides: The Lessee, Lessee's employees, agents and sublessees and their employees and agents agree to abide by all laws, regulations, and ordinances of the Colorado River Tribes now in force and effect, or that may be hereafter in force and effect; provided, that no such future laws, regulations or ordinances shall have the effect of changing or altering the express provisions and conditions of this lease unless consented to in writing by the Lessee. By consenting to abide by all of CRIT's

7

"laws, regulations, and ordinances," Defendants consented to the jurisdictional provisions of the Tribal Constitution and Code, which provide that the courts of the Tribes have jurisdiction over "[a]ny person who owns, uses or possesses any property within the Reservation, for any civil cause of action . . . prohibited by this Code or ordinances of the Tribes arising from such ownership, use or possession." Tribal Law & Order Code ("L&O Code"), Art. I, § 101(c); see also L&O Code, Art. I, §§ 101(a), (b), & (d) (extending Tribal Court jurisdiction over persons who are present, transact business, or commit torts within the Reservation). These provisions were enacted in 1974, before execution of the Lease. The Tribal Property Code, Article I (Evictions), also provides that the provisions of that Article apply to all landlords and tenants within the Reservation. Tribal Property Code, Art. I, § 1-102. Moreover, by consenting to the Tribes regulatory authority, Defendants' presumptively consented to the Tribal Court's jurisdiction over disputes arising out of the Tribes' laws. See Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997) ("[W]here tribes possess authority to regulate the activities of nonmembers, '[c]ivil jurisdiction over [disputes arising out of] such activities presumptively lies in the tribal courts."); see also Smith v. Salish Kootenai College, 434 F.3d 1127, 1138, 1139 (9th Cir. 2006) (en banc) (noting that individual can consent to tribal court jurisdiction, unlike federal court subject matter jurisdiction). Therefore, as in Wendt, the Defendants here have waived any challenge to Tribal Court jurisdiction by agreeing to abide by all Reservation laws.

Defendants' fourth argument is:

4. "This action must be dismissed because Defendants Water Wheel Recreational Area and Robert Johnson are non-Indians, who neither explicitly or implicitly consented to the jurisdiction of, or undertook any conduct within, the exterior boundaries of the Colorado River Indian Tribes and is therefore beyond the jurisdiction of the Court."

The Court will hear and receive testimony and evidence of this argument on February 15, 2008 at 9:00 A.M. The issue of personal jurisdiction over Defendants will be the only issue addressed by the Court on that date.

8

Defendants' fifth and final argument is:

5. "Moves to dismiss on the grounds and for the reason that the complaint fails to join an indispensable party, namely the United States and any other lessee having any interest in the purported lease."

As to this argument, the Court denies the Motion to Dismiss on the grounds that the United States is not an indispensable party to the suit. This Court adopts the reasoning of the Ninth Circuit of Appeals in Puyallup Indian Tribe v. Port of Tacoma, 717 F.2d 1251, 1254 (9th Cir. 1983) and the district court in Oneida Indian Nation of New York v. Oneida County, 434 F. Supp. 527 (N.D.N.Y 1977). For the reasons stated in Puyallup Indian Tribe and Oneida Indian Nation of New York, where the same question was presented, this Court holds that the United States is not an indispensable party to this litigation..

## WHEREFORE IT IS ORDERED AS FOLLOWS:

A. Defendants motion to dismiss on grounds that the property in question is legally incapable of being within the exterior boundaries of the Colorado Indian Tribes Reservation and that the Court therefore lacks jurisdiction is DENIED on the grounds of estoppel, equitable estoppel and waiver.

B. Defendants motion to dismiss on grounds that the property in question is not held in trust by the United States for the Colorado River Indian Tribes and therefore is legally incapable of being within the exterior boundaries of the Colorado Rive Indian Tribes Reservation and therefore this Court lacks jurisdiction is DENIED on the grounds of estoppel, equitable estoppel and waiver.

C. Defendants motion to dismiss the case on grounds that the property in question is not otherwise within the exterior boundaries of the Colorado River Indian Tribes Reservation and therefore this Court lacks jurisdiction is DENIED on the grounds of estoppel, equitable estoppel and waiver.

D. Defendants motion to dismiss the case on grounds that the complaint fails to join an indispensable party, namely the United States, is DENIED.

E. Defendants motion to dismiss on grounds that Defendants Water

Wheel Recreational Area and Robert Johnson are non-Indians, who neither explicitly or implicitly consented to the jurisdiction of, or undertook any conduct within, the exterior boundaries of the Colorado River Indian Tribes is set for evidentiary hearing on February 15, 2008 at 9:00 A.M. The burden of proof will be on the Tribe to show by a preponderance of evidence that Defendants Water Wheel and Johnson had minimum contacts with the Colorado River Indian Tribes sufficient to warrant this Court's exercise of personal jurisdiction over them. The parties are directed to have their witnesses prepared to testify and their evidence available to present at the evidentiary hearing. If any party wishes the Court to issue subpoenas for the appearance of witnesses, they shall file a list of witnesses with the Court on or before January 29, 2008. Evidence and arguments regarding the boundaries of the CRIT reservation, that the property in question is not within the boundaries of the CRIT reservation or that challenges CRIT's "ownership" of the property in question will not be heard or accepted at the hearing as those issues and arguments are barred by the ruling of this Court in this Order.

SO ORDERED this 15th day of January, 2008.

_____
Gary LaRance, Judge, CRIT Tribal Court