**<u>Defendants' Exhibit 1 to Responsive Memorandum of April 24, 2009</u>**

**<u>Table of Contents – Tribal Court Record (TCR)</u>**

(Note:  A paper copy of the Tribal Court Record is being provided to Judge
Campbell pursuant to LRCiv 5.4.)

TCR- 1     *Petition for Eviction; Complaint for Damages in Contract and Tort*,
Colorado River Indian Tribes vs. Water Wheel Camp Recreational Area,
Inc., Robert Johnson, and Does 1-20, Tribal Court, Colorado River Indian
Tribes, Case No. CV-CO-2007-0100. (October 1, 2007)

**In accordance with LRCiv 7.1(d) Defendants note that the Petition for Eviction is
attached as Exhibit A to Plaintiffs' Complaint in No. 2:08-CV-474
(Dkt. # 1-1).**

TCR- 2     *Judgment*, Colorado River Indian Tribes vs. Water Wheel Camp
Recreational Area, Inc., Robert Johnson, and Does 1-20, Tribal Court,
Colorado River Indian Tribes, Case No. CV-CO-2007-0100. (June 13,
2008)

TCR- 3     *Opinion and Order*, Colorado River Indian Tribes vs. Water Wheel Camp
Recreational Area, Inc., Robert Johnson, and Does 1-20,The Court of
Appeals of the Colorado River Indian Tribes, Case No. 08-0003. (March
10, 2009)

**In accordance with LRCiv 7.1(d) Defendants note that the Opinion and Order is
attached as Exh. 1 to the Joint Status Report filed in No. 2:08-CV-474
on March 17, 2009 (Dkt. # 46-1).**

TCR- 4     *Order Denying Defendant Water Wheel Recreational Area, Inc., and
Robert Johnson's Motions to Dismiss For Lack of Jurisdiction,* Colorado
River Indian Tribes vs. Water Wheel Camp Recreational Area, Inc.,
Robert Johnson, and Does 1-20, Tribal Court, Colorado River Indian
Tribes, Case No. CV-CO-2007-0100. (January 15, 2008) ("January 15
Order")

**In accordance with LRCiv 7.1(d) Defendants note that this Order is attached as
Exhibit B to Plaintiffs' Complaint in No. 2:08-CV-474 (Dkt. #1-2)**

TCR- 5   *Lease No.  B-468-CR*, Lessee: Water Wheel Camp Recreation Area, Inc., Lessor: Colorado River Indian Tribes. (May, 15, 1975) (Approved by Secretary of the Interior July 7, 1975.) ("Lease")

**In accordance with LRCiv 7.1(d) Defendants note that the Lease is attached as Exhibit A to Exhibit A of Plaintiffs' Complaint in No. 2:08-CV-474 (Dkt. # 1-1, pp. 13-46).**

TCR- 6   *Judgment*, United States of America v. Bert Thomas Denham and Barbara I. Denham, Civil No. 73-495-ALS, United States District Court, Central District of California. (March 5, 1975) ("Denham Judgment")

**In accordance with LRCiv 7.1(d) Defendants note that this Judgment is attached as Exhibit 3 to Defendants' Opposition to Plaintiffs' Emergency Motion for TRO, filed March 13, 2008, in No. 2:08-CV-474 (Dkt. # 14-3).**

TCR- 7   *Letter from Jack D. Holt, Esq., Keller and Holt, to Bryan N. Freeman, Assistant U.S. Attorney*, Re: U.S. v. Denham, District Court Case No. 73-495-ALS. (May 30, 1973)

TCR- 8   *Letter from William D. Keller, United States Attorney, to the Honorable Wallace H. Johnson, Assistant Attorney General, Land and Natural Resources Division, United States Department of Justice*, Re: U.S. v. Denham, District Court Case No. 73-495-ALS. (October 1, 1974)

TCR- 9   *Memorandum from United States Department of the Interior*, Re: United States v. Bert Thomas Denham, et al., Civ. No. 73-495-ALS (April 2, 1975)

TCR- 10   *Exhibits #25, #26 and #28 appended to the Deposition of Robert Johnson on February 29, 2008*, Colorado River Indian Tribes vs. Water Wheel Camp Recreational Area, Inc., Robert Johnson, and Does 1-20, Tribal Court, Colorado River Indian Tribes, Case No. CV-CO-2007-0100.

TCR- 11   *Order,* Re: Defendants Water Wheel Recreational Area, Inc., and Robert Johnson's Motions to Dismiss, Plaintiff's Requests for Admissions, etc., Colorado River Indian Tribes vs. Water Wheel Camp Recreational Area, Inc., Robert Johnson, and Does 1-20, Tribal Court, Colorado River Indian Tribes, Case No. CV-CO-2007-0100. (February 21, 2008)

**In accordance with LRCiv 7.1(d) Defendants note that this Order is attached as Exhibit 1 to Defendants' Opposition to Plaintiffs' Emergency Motion for TRO, filed March 13, 2008 in No. 2:08-CV-474 (Dkt. # 14-1).**

TRC- 12   *Order,* Re: Defendants Water Wheel Recreational Area, Inc., and Robert Johnson's Motions to Dismiss, Montana analysis, etc., Colorado River Indian Tribes vs. Water Wheel Camp Recreational Area, Inc., Robert Johnson, and Does 1-20, Tribal Court, Colorado River Indian Tribes, Case No. CV-CO-2007-0100. (March 18, 2008)

**In accordance with LRCiv 7.1(d) Defendants note that this Order is attached as Exhibit B to Plaintiffs' Second Motion for Temporary Restraining Order, dated May 10, 2008, in No. 2:08-CV-474 (Dkt. # 26-2).**

# Defendants' Exhibit 1

# Response Memorandum of April 24, 2009

# Tribal Court Record-1

## *Colorado River Indian Tribes v. Water Wheel*

## Petition for Eviction

**(not attached—This document is Exhibit A to Plaintiffs' Complaint in
No. 2:08-CV-474 (Dkt. # 1-1).**

# Defendants' Exhibit 1

# Response Memorandum of April 24, 2009

# Tribal Court Record-2

## *Colorado River Indian Tribes v. Water Wheel*

## Judgment of June 13, 2008

IN THE TRIAL COURT
OF THE COLORADO RIVER INDIAN TRIBES
PARKER, ARIZONA

| | |
|---|---|
| COLORADO RIVER INDIAN TRIBES, | Case No. CV-CO-2007-0100 |
| Petitioner/Plaintiff, | |
| vs. | **JUDGMENT** |
| WATER WHEEL CAMP RECREATIONAL AREA, INC., ROBERT JOHNSON, and DOES 1-20, | |
| Respondents/Defendants. | |

THIS MATTER having come before the Colorado River Indian Tribes (CRIT) Trial Court for TRIAL on June 4-6, 2008.

The Petitioner/Plaintiff appeared through Attorneys Winter King, Amanda Garcia and Eric Shepard. Defendant Water Wheel Recreational Area appeared through Attorney Michael Frame. Defendant Robert Johnson appeared with Attorney Fred Welch.

After duly considering the pleadings, the testimony of witnesses, the evidence, and the arguments of counsel, and being otherwise fully informed of the causes of action, the responses and all factual and legal issues bearing on the same, the Court hereby finds as follows.

1.     The Court hereby adopts and incorporates into this Judgment all findings of facts and conclusions of law previously entered by the Court in all Orders issued to date, also known as "the law of the case".

### FIRST CAUSE OF ACTION
### OCCUPATION OF TRIBAL LAND WITHOUT PERMISSION OR AGREEMENT
#### (CRIT Property Code § 1-101 et seq.)

2.     In July 1975, the Plaintiff Colorado River Indian Tribes ("CRIT" or "Tribes") entered into Lease No. B-468-CR ("Lease") with Defendant Water Wheel Camp Recreational Area, Inc. ("Water Wheel"). Per the Lease, CRIT is the "Lessor" and "Water Wheel" is the Lessee. The term of the Lease is thirty-two (32) years beginning July 1975 and ending July

6, 2007. Per the Lease, CRIT agreed to lease twenty-six (26) acres of CRIT reservation trust land ("real property") to Water Wheel. The leased land is more fully described in Plaintiff's Exhibit 1, at pg I, para. I.

    a.     Plaintiff's Exhibit 1, pg I and II, para. II.

3.    The Lease between Water Wheel and CRIT expired on July 6, 2007.

    a.     Plaintiff's Exhibit 1, at para. II.

    b.     Plaintiff's Request for Admissions to Defendant Robert Johnson, served on Defendant Johnson on February 8, 2008 ("First Johnson RFA"), at 2(a).

    c.     Plaintiff's Request for Admissions to Defendant Water Wheel, served on Defendant Water Wheel on February 8, 2008 ("First Water Wheel RFA"), at 2(a)

4.    CRIT, as Lessor of the real property, is entitled to pursue an "eviction" action against Defendants under the CRIT Property Code, § 1-101 et seq. and to obtain any and all relief authorized under the Code.

5.    Pursuant to Property Code, § 1-302, CRIT made reasonable notice and demand on Defendants to: vacate the property upon expiration of the Lease, that CRIT did not intend to renew the Lease, that CRIT intended the Lease to expire, and that CRIT intended to take over operation of Water Wheel resort after expiration of the Lease.

    a.     Plaintiff's Exhibit 2, Letter from Herman Laffoon, Jr., Commercial Manager for CRIT Realty Services, to Johnson, dated January 3, 2007.

    b.     First Johnson RFA, Requests 2(c) & (d).

    c.     First Water Wheel RFA, Requests 2(c) & (d).

    d.     Plaintiff's Petition for Eviction; Complaint for Damages in Contract and Tort ("Complaint").

    e.     Testimony of Herman Laffoon, Jr. that he told Johnson that CRIT was not going to renew the Lease and that CRIT was going to take over the operation of the Water Wheel park as a tribal operation after expiration of the Lease;

f.      Testimony of Johnson that he knew that CRIT wanted to take over operation of Water Wheel park as a tribally run business after expiration of the Lease.

g.      Plaintiff's Second Request for Admissions to Defendant Water Wheel served on March 3, 2008 ("Second Water Wheel RFA"), Request 3(g).

h.      Plaintiff's Second Request for Admissions to Defendant Robert Johnson served on March 3, 2008 ("Second Johnson RFA"), Request 3(g).

6.      Defendants have continued to remain on, use and occupy the Water Wheel resort property and collect rental payments from tenants and/or sub lessees and/or members of Water Wheel Resort after expiration of the Lease on July 7, 2007.

a.      Testimony of Defendant Johnson.

b.      Testimony of Mr. Laffoon.

c.      First Johnson RFA, Request 2(e).

d.      First Water Wheel RFA, Request 2(e).

e.      Second Johnson RFA, Request 3(f).

f.      Second Water Wheel RFA, Request 3(f).

7.      Defendants do not have CRIT's permission to continue to occupy the property after expiration of the Lease on July 6, 2007.

a.      Testimony of Mr. Laffoon.

b.      First Johnson RFA, Request 2(b).

c.      First Water Wheel RFA, Request 2(b).

8.      CRIT has proven by a preponderance of the evidence that the Tribes are entitled to Judgment and a Writ of Restitution against the Defendants ordering their eviction and delivery of the property to the Tribes.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF

9.      There is an actual controversy between CRIT and Defendants insofar as CRIT asserts that: (a) Defendants are occupying the Tribes' property without the Tribes' permission after a reasonable demand to vacate was made; (b) as a result, CRIT has

1  been deprived of the use of its property since July 7, 2007; (c) CRIT has also been

2  deprived of adequate rent under the terms of the Lease.  The facts establishing CRIT'S

3  entitlement to declaratory relief are set forth herein.

4  **THIRD CAUSE OF ACTION**
**BREACH OF LEASE AGREEMENT**

5

6  10.    Pursuant to the Lease, Defendant Water Wheel was required to pay CRIT the

7  following percentages of gross receipts of business: (1) Sales of alcoholic beverages:

8  5%; (2) Rentals of trailer and camping spaces: 4%; (3) All other income derived from

9  business conducted on the premises: 2%.

10        a.     Plaintiff's Exhibit 1, Lease, pages II-III, paragraph IV(B).

11  11.    Water Wheel owed CRIT $24,903.09 in percentages of gross receipts for the

12  2001-02 year.

13        a.     Plaintiff's Exhibit 12.

14  12.    Water Wheel owed CRIT $28,255.77 in percentages of gross receipts for the

15  2002-03 year.

16        a.     Plaintiff's Exhibit 13.

17        b.     Defendants' Exhibit 2.

18  13.    Water Wheel owed CRIT $27,447.54 in percentages of gross receipts for the

19  2003-04 year.

20        a.     Plaintiff's Exhibit 14.

21        b.     Defendants' Exhibit 2.

22  14.    Water Wheel owed CRIT $32,340.48 in percentages of gross receipts for the

23  2004-05 year.

24        a.     Plaintiff's Exhibit 15.

25        b.     Defendants' Exhibit 2.

26  15.    Water Wheel owed CRIT $41,245.89 in percentages of gross receipts for the

27  2005-06 year.

28

3

1    a.    Testimony of Robert Johnson.

2    b.    Defendants' Exhibit 2.

3    16.    Water Wheel owed CRIT $36,664.39 in percentages of gross receipts for the

4    2006-07 year.

5    a.    Testimony of Robert Johnson.

6    b.    Defendants' Exhibit 2.

7    17.    In total, Water Wheel owed CRIT $190,857.16 in percentages of gross receipts

8    for the years 2001-02, 2002-03, 2003-04, 2004-05, 2005-06, and 2006-07.

9    18.    Defendants did not pay CRIT any percentages of gross receipts of business for

10    the following years: 2001-02; 2002-03; 2003-04; 2004-05; 2005-06; 2006-07.

11    a.    Testimony of Mr. Laffoon.

12    b.    Plaintiff's Exhibits 3-9.

13    c.    Second Water Wheel RFA, Requests 3(a), (b) & (c).

14    d.    Second Johnson RFA, Requests 3(a), (b) & (c).

15    e.    Special Appearance, Motion to Dismiss, and Answer of Robert Johnson,

16          paragraph 21 (admitting that "payments were made as set forth in ¶ 20(a)

17          through (h)" of Plaintiff's Complaint).

18    f.    Special Appearance, Motion to Dismiss, and Answer of Water Wheel,

19          paragraph 21 (admitting that "payments were made as set forth in ¶ 20(a)

20          through (h)" of Plaintiff's Complaint).

21    g.    Plaintiff's Complaint, paragraph 20(a) through (h) (indicating the

22          payments made by Water Wheel and whether they were for base annual rent or

23          percentages).

24    19.    Pursuant to the Lease, Water Wheel was required to pay CRIT a minimum

25    annual rent of $100 per acre per year for the first through the twenty-fifth years of the

26    Lease.

27    a.    Plaintiff's Exhibit 1, Lease, at pg II, para. IV(A).

28

4

20.    Pursuant to the Lease, prior to the twenty-sixth year of the Lease, the parties were to renegotiate the minimum annual rent to the then current fair annual rental value of the property exclusive of improvements, which value was to be estimated by normal appraisal procedures and methods.

    a.    Plaintiff's Exhibit 1, Lease, at pg II, para. IV(A).

21.    In 2000 and 2001, CRIT attempted to establish the minimum annual base rent that would be due from Defendants beginning the twenty-sixth year of the Lease.

    a.    Plaintiff's Exhibit 10 and 11.

    b.    Testimony of Mr. Laffoon.

    c.    Defendant's Exhibit 1

    d.    Testimony of Mr. Johnson.

22.    The Tribes' position was that the new minimum annual rent should have been $101,500.

    a.    Plaintiff's Exhibit 11.

    b.    Testimony of Mr. Laffoon.

23.    The Tribes informed Defendants that, according to the Tribes' appraisal, the new minimum annual rent would be $101,500.

    a.    Plaintiff's Exhibit 11.

    b.    Testimony of Mr. Laffoon.

24.    The parties failed to reach an agreement as to the minimum annual base rent due beginning the twenty-sixth year of the Lease.

    a.    Testimony of Mr. Laffoon.

    b.    Defendant's Exhibit 1

    c.    Testimony of Mr. Johnson.

25.    Pursuant to the terms of the Lease, lessee Water Wheel was required to pay the following minimum annual rent:

    the sum of one hundred dollars ($100.00) per acre per year *for the first through the twenty-fifth year of the lease.* Prior to the beginning of the twenty-sixth

year, Lessee and Lessor shall renegotiate the minimum annual rent to the then current fair annual rental value of the leased premises exclusive of improvements. *Said fair annual rental to be estimated by normal appraisal procedures and methods. . . .*

    a.    Plaintiff's Exh. 1, Lease, at II (emphases added).

26.    According to the plain language of this provision, two things are clear: First, the "one hundred dollars per acre per year" minimum annual rental applies only to the first through the twenty-fifth year of the Lease. It is not a default rent for the entire thirty-two years of the Lease. Second, the rent for the twenty-sixth through the thirty-second years of the lease was to be set at the "then current fair annual rental value" of the property, and this value was to be established "by normal appraisal procedures and methods." Thus, the rent for the last seven years of the Lease was not simply to be the result of open-ended negotiations by the parties, but instead was to be established by the objective standards of professional appraisal.

27.    CRIT has shown at trial that the parties never agreed on what the true fair annual rental value of the property was for 2000 through 2007. CRIT sought to establish the new minimum annual rent.

    a.    Plaintiff's Exhibits 10 and 11.

    b.    Testimony of Mr. Laffoon.

28.    CRIT's original position was that the fair annual rental value for the property was $130,000 per year; CRIT subsequently reduced that figure to $101,500. CRIT notified Defendants of its position by letter. *See* Plaintiff's Exhibits 10 & 11. Water Wheel did not pay this increased rent. Instead, Water Wheel paid CRIT $14,503.58—the rental value Water Wheel argued was the fair annual value for the property—for three years (2000-01, 2001-02, and 2002-03), then paid CRIT $2,600 for two years (2003-04, 2004-05), then stopped paying CRIT completely (2005-06, 2006-07).

29.    Because the parties never agreed on what that fair annual rental value should have been, CRIT is now asking the Court to make that determination. Although the

6

1   parties could have sought resolution of this issue earlier, the delay in bringing suit did

2   not harm Water Wheel. Water Wheel was clearly on notice that the minimum annual

3   rent would increase to the fair market value of the property for the last seven years of

4   the Lease. In support of this fact, Water Wheel actually paid CRIT $14,503.58 per

5   year for the first three years of the period in which the new minimum annual rent was

6   to apply. *See* Plaintiff's Exhibits 3, 4, 5, 6. This increase reflected Water Wheel's

7   position on what the new minimum annual rent should have been. *See* Compl. ¶ 17;

8   Water Wheel Answer ¶ 18; Johnson Answer ¶ 19 (admitting that Water Wheel's

9   position was $14,503.58). Finally, CRIT notified Water Wheel of its position on the

10   new minimum annual rent, and gave Water Wheel the opportunity to either accept the

11   new rent, or request a cancellation of the Lease. Plaintiff's Exhibits 10 & 11. Water

12   Wheel did neither, instead choosing to remain on the property and pay significantly

13   less rent than the fair annual rental value of the property.

14   30.    At trial, CRIT presented evidence of Walter Winius, Jr., an expert appraiser,

15   establishing that the fair market rental value of the property exclusive of improvements

16   as of July 1, 2000 was $192,000 per year. Mr. Winius also testified that he reached this

17   conclusion by using normal appraisal methods. This testimony supports CRIT's claim

18   for damages in two ways. First, it supports CRIT's claim that, pursuant to the Lease,

19   CRIT should have received $192,000 per year for the last seven years of the Lease.

20   Mr. Winius's testimony also supports CRIT's alternative argument that, of the two

21   appraisals relied upon by parties in renegotiating the rent, CRIT's appraisal of

22   $101,500 per year was much closer to the true fair market value of the property than

23   Water Wheel's appraisal of $14,503.58 per year, and thus CRIT should have received

24   at least $101,500 per year.

25   31.    Finally, the actions of Water Wheel indicate that it, too, interpreted the Lease to

26   provide for an increase in the minimum annual rent to the fair market rental value of

27   the property for the last seven years, regardless of when or whether the parties reached

28

1  a negotiated agreement on the new rent.  Although CRIT never agreed to Water

2  Wheel's proposed new rent of $14,503.58 per year, Water Wheel paid that amount for

3  the first three years of the new rental period (2000-2003).  Thus, Water Wheel

4  apparently shared CRIT's interpretation of the Lease that, regardless of the status of

5  negotiations at the time, Water Wheel was going to be required to pay the fair market

6  rental value for the property for the last seven years of the Lease.  Accordingly, CRIT

7  is entitled to damages in the amount of the unpaid minimum annual rent, as that

8  minimum annual rent is determined by the Court.

9  32.    The fair market rental value of the property as of July 1, 2000 was $192,000.

10       a.    Testimony of Walter Winius, Jr.

11  33.    Water Wheel paid CRIT the following amounts in minimum annual rent for the

12  years 2000-01, 2001-02, 2002-03, 2003-04, and 2004-05:

13       a.    July 7, 2000: $2,600 (base rent for 2000-2001)

14       b.    January 31, 2001: $11,903.58 (additional base rent for 2000-2001)

15       c.    January[1] 19, 2001: $14,503.58 (base rent for 2001-2002)

16       d.    August 16, 2002: $14,503.58 (base rent for 2002-2003)

17       e.    August 14, 2003: $2,600 (base rent for 2003-2004)

18       f.    October 10, 2005: $2,600 (base rent for 2004-2005)

19            i.    Plaintiff's Complaint ¶ 20.

20            ii.    Special Appearance, Motion to Dismiss, and Answer of Robert

21                  Johnson, paragraph 21 (admitting that "payments were made as

22                  set forth in ¶ 20(a) through (h)" of Plaintiff's Complaint).

23            iii.    Special Appearance, Motion to Dismiss, and Answer of Water

24                  Wheel, paragraph 21 (admitting that "payments were made as set

25                  forth in ¶ 20(a) through (h)" of Plaintiff's Complaint).

26

27  _____

28  [1] Plaintiff's Exhibit 5 shows an actual receipt date of "July" 19, 2001.

8

iv.     Plaintiff's Exhibits 3-8.

v.      Testimony of Mr. Laffoon.

34.     The payments listed in paragraph 33 are the only payments Water Wheel made to CRIT for the minimum annual rent due under the Lease for the years 2000-01, 2001-02, 2002-03, 2003-04, and 2004-05.

a.      Testimony of Mr. Laffoon.

b.      Second Johnson RFA, Request 3(b).

c.      Second Water Wheel RFA, Request 3(b).

35.     Pursuant to Property Code, § 1-316(b), CRIT has proven by a preponderance of the evidence that the Tribes are entitled to actual damages, including interest, as provided in the Lease (Plaintiff's Exhibit 1, Lease, at pg II, para. IV(A).

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**ADVANTAGE**

36.     Pursuant to the terms of the Lease, CRIT was entitled to regain possession of the real property subject to the Lease, along with improvements thereto, upon expiration of the Lease.

a.      Plaintiff's Exhibit 1, Lease, Addendum page 5, paragraph 6; Addendum page 20, paragraph 29.

37.     The Tribes' intended to take over operation of the Water Wheel Resort when the Lease expired.

a.      Testimony of Mr. Laffoon.

b.      Testimony of Mr. Johnson.

38.     One or more CRIT employees informed Water Wheel that the Tribes intended to take over operation of the Resort upon expiration of the Lease.  Defendant Johnson knew that CRIT intended to operate the Water Wheel park after expiration of the lease on July 6, 2007.

a.      Second Johnson RFA, Request 3(g).

9

1   b.   Second Water Wheel RFA, Request 3(g).

2   c.   Testimony of Mr. Laffoon.

3   d.   Testimony of Mr. Johnson.

4   39.   Defendants nonetheless continued to occupy the property and operate the Resort

5   after expiration of the Lease.  See paragraph 6 above.

6   40.   Defendants' interference with CRIT's right to operate the Resort after expiration

7   of the Lease was intentional.

8   a.   Inference from facts set forth above. *See Ramona Manor Convalescent*

9        *Hospital v. Care Enterprises*, 177 Cal. App. 3d 1120, 1132 (1986).

10  41.   As a result of Defendants' actions, CRIT could not take over operation of the

11  Resort.

12  a.   Testimony of Mr. Laffoon.

13                    **CRIT'S ATTORNEYS' FEES**

14  42.   CRIT has prevailed in its action to evict Defendants.

15  43.   CRIT has prevailed in its action alleging Defendants breached the lease with the

16  Tribes and that CRIT is entitled to recover damages (rents due) under the lease.

17  44.   CRIT has prevailed in its Motion to Compel Discovery.  Defendants disobeyed

18  the Court's order compelling discovery.

19  45.   The amount of attorneys' fees requested by CRIT is reasonable in light of the

20  complexity of this case and Defendants' litigation strategy.

21  46.   During the course of this case, the Defendants filed numerous motions,

22  interlocutory appeals and disobeyed the court orders compelling discovery.  As a result

23  of Defendants litigation strategy, the amount of time CRIT's attorneys had to spend

24  litigating Defendants' motions, interlocutory appeals and disobedience of court orders

25  compelling discovery, the Plaintiff's attorney fees and costs have increased

26  significantly.  Defendants refused to comply with any of the Court's discovery orders

27  or procedures, requiring CRIT to file a motion to compel discovery and two motions in

28

                              10

1  limine.

2  **WATER WHEEL AND JOHNSON ARE DEEMED TO BE ALTER EGOS AS A**
3  **SANCTION FOR VIOLATING THE COURT'S ORDER COMPELLING**
   **DISCOVERY**

4
5  47.    Defendants willfully violated the Court's order compelling discovery.

6       a.    Declaration of Winter King in Support of Plaintiff's Motion in Limine to
7             Exclude Evidence at Trial on the Merits filed June 2, 2008.

8  48.    Plaintiff was prejudiced by Defendants' failure to provide discovery.

9       a.    Declaration of Winter King in Support of Plaintiff's Motion in Limine to
10            Exclude Evidence at Trial on the Merits filed June 2, 2008.

11 49.    Sanctions are imposed against Defendant Johnson in accordance with TRCP
12 Rule 37.    Therefore, the Court finds that Defendant Robert Johnson is the majority
13 shareholder and person with ultimate decision-making authority for Water Wheel.

14       a.    Johnson Document Request No. 16;  Water Wheel Document Request
15             No. 21;  Water Wheel Interrogatories Nos. 6, 7, 11.

16 50.    Sanctions are imposed against Defendant Johnson in accordance with TRCP
17 Rule 37.    The Court therefore finds that Defendant Water Wheel is inadequately
18 capitalized as a corporation.

19       a.    Water Wheel Document Request Nos. 14, 23, 24;  Water Wheel
20             Interrogatories Nos. 14, 15.

21 51.    Sanctions are imposed against Defendant Johnson in accordance with TRCP
22 Rule 37.    The Court therefore finds that from 1999 to the present, Water Wheel has
23 made loans and gifts to Johnson.

24       a.    Johnson Document Request No. 13;  Water Wheel Document Request
25             No. 26;  Johnson Interrogatories Nos. 17, 20.

26 52.    Sanctions are imposed against Defendant Johnson in accordance with TRCP
27 Rule 37.    The Court therefore finds that from 1999 to the present, Johnson has made
28 loans and gifts to Water Wheel.

1       a.     Johnson Document Request No. 14; Water Wheel Document Request

2     No. 27.

3 53.    Sanctions are imposed against Defendant Johnson in accordance with TRCP

4 Rule 37. The Court therefore finds that from 1999 to the present, Johnson has

5 borrowed and used Water Wheel funds for his personal use and for the use of third

6 persons.

7       a.     Johnson Interrogatories Nos. 17, 18, 19, 20.

8 54.    Sanctions are imposed against Defendant Johnson in accordance with TRCP

9 Rule 37. The Court therefore finds that Water Wheel and Johnson's financial records

10 are not separately maintained.

11       a.     Document Request No. 12; Water Wheel Document Request No. 25; c.

12           Johnson Interrogatories Nos. 23, 24; Water Wheel Interrogatories Nos.

13           12, 13.

14 55.    Sanctions are imposed against Defendant Johnson in accordance with TRCP

15 Rule 37. The Court therefore finds that since Johnson became president of Water

16 Wheel, Water Wheel has not kept corporate minutes or elected directors.

17       a.     Water Wheel Document Request No. 19, 20.

18 56.    Sanctions are imposed against Defendant Johnson in accordance with TRCP

19 Rule 37. The Court therefore finds that Johnson's compensation from Water Wheel

20 has increased from 1999 to the present.

21       a.     Johnson Document Request No. 18; Water Wheel Document Request

22           No. 14; Water Wheel Interrogatories No. 9.

23 57.    Sanctions are imposed against Defendant Johnson in accordance with TRCP

24 Rule 37. The Court therefore finds that Johnson has commingled rent monies Water

25 Wheel owes to the Tribes with his own personal assets.

26       a.     Johnson Document Request No. 13; Water Wheel Document Request

27           Nos. 25, 26; Johnson Interrogatories No. 17, 18, 19, 20.

28

## DAMAGES

58.     CRIT is entitled to its lost profits of **$33,549.58** per month, from July 7, 2007 until Defendants vacate the property. The damages (lost profits) and judgment shall bear interest at ten percent (10%) per annum.

     a.     Testimony of Walter Winius.

59.     CRIT is entitled to **$190,857.16** for unpaid percentages of gross receipts of business under the Lease.  The damages (unpaid percentages of gross receipts of business) and judgment shall bear interest at ten percent (10%) per annum from the date each annual rental payment was due under the terms of the lease

     a.     Evidence in support of Paragraphs 10-18, *supra*.

     b.     Plaintiff's Exhibit 1, Lease, pg III, para. V.

     c.     Property Code, § 1-316(b).

60.     CRIT is entitled to **$1,295,289.26** in damages for unpaid minimum annual rent under the Lease from July 7, 2000 to July 7, 2007.  The damages (unpaid minimum annual rent) and judgment shall bear interest at ten percent (10%) per annum from the date each annual rental payment was due under the terms of the lease

     a.     Evidence in support of Paragraphs 19-31, *supra*.

     b.     Plaintiff's Exhibit 1, Lease, pg III, para. V.

     c.     Property Code, § 1-316(b).

61.     Per Property Code, § 1-316(i) and per the Lease, Plaintiff's Exhibit 1, Addendum, pg 19, para. 22, CRIT is entitled to **$281,382.00** in attorneys' fees and **$2,110.72** in costs.

     a.     Declaration of Winter King in Support of Plaintiff's Request for Attorney's Fees and Costs filed June 2, 2008.

     b.     Supplemental Declaration of Winter King in Support of Plaintiff's Request for Attorney's Fees and Costs filed June 11, 2008.

## DEFENDANTS ARE NOT ENTITLED TO "OFFSETS" OR "DAMAGES"

62.     Defendants waived any claim to "offsets" or "damages" by failing to plead them as affirmative defenses.

63.     Sanctions are imposed against Defendants Water and Johnson in accordance with TRCP Rule 37. The evidence presented in support of Defendants' claim for damages must be excluded as a sanction for Defendants' refusal to produce documents requested by CRIT and ordered by this Court.

     a.     Plaintiff's Second Request for Production and Inspection of Documents to Defendants Water Wheel, served on March 3, 2008 ("Second Water Wheel Document Request"), Requests 12-14, 23-24.

64.     Defendants failed to prove that they are entitled to "offsets" or "damages."

65.     Defendants failed to prove that CRIT breached the terms of the Lease.

66.     Defendants failed to present any credible evidence of the amount of damages supposedly incurred by Defendants.

### WHEREFORE IT IS ORDERED THAT:

67.     CRIT's Petition for Eviction is GRANTED.

68.     The Court finds that Defendant Water Wheel has breached the lease with CRIT by failing to pay rent, and awards CRIT the following damages:

     1.     One Hundred Ninety Thousand, Eight Hundred Fifty-Seven dollars and Sixteen cents (**$190,857.16**) for unpaid percentages of gross receipts of business, and

     2.     One Million, Two Hundred Ninety-Five Thousand, Two Hundred Eighty-Nine dollars and Twenty-Six cents (**$1,295,289.26**) for unpaid minimum annual rent.

     3.     Total damages for unpaid rent is One Million, Four Hundred Eighty-Six Thousand, One Hundred Forty-Six dollars and Forty-Two cents (**$1,486,146.42**).

14

4.      The total damages shall bear interest at ten percent (10%) per annum from the date each rental payment was due to the Tribes under the terms of the lease.

69.     The Court finds that Defendants have intentionally interfered with CRIT's prospective economic advantage.   The Court finds that Defendants have occupied CRIT's property without CRIT's permission and awards CRIT Thirty-Three Thousand, Five Hundred Forty-Nine dollars and Fifty-Eight cents ($33,549.58) per month as damages for its lost profits from July 7, 2007 until the date Defendants vacate the property. The damages shall bear interest at ten percent (10%) per annum.

70.     The Court declares that the Lease has expired on or about July 7, 2007 and that Defendants have no right, title, and/or interest in the property.

71.     The Court awards CRIT Two Hundred Eighty-One Thousand, Three Hundred Eighty-Two dollars ($281,382.00) in attorneys' fees and Two Thousand, One Hundred Ten dollars and Seventy-Two cents ($2,110.72) in costs.

72.     CRIT's Motion in Limine to Exclude Evidence at Trial on the Merits filed June 2, 2008 is GRANTED.

73.     Defendants Water Wheel and Robert Johnson are jointly and severally liable for all damages awarded pursuant to this Order.

74.     Pursuant to the Order issued by United States District Judge David G. Campbell on March 14, 2007 in *Water Wheel Camp Recreational Area, Inc., et al. vs. Gary LaRance, et al.,* Case No. CV08-0474-PHX-DGC, Plaintiff Colorado River Indian Tribes shall afford Defendants Water Wheel and Johnson a period of 15 days, commencing the date the CRIT Court of Appeals enters a final appellate decision, to seek review of their *Montana* arguments in the U.S. District Court for the District of Arizona before taking any action to evict Defendants from the property or otherwise interfering with Defendants' occupancy of the property.

Date ___June 13, 2008___

___Gary LaRance___ (signature)

Gary LaRance, Chief Judge
Colorado River Indian Tribes Trial Court

15

# Defendants' Exhibit 1

# Response Memorandum of April 24, 2009

# Tribal Court Record-3

### *Colorado River Indian Tribes v. Water Wheel*

## Court of Appeal Decision of March 10, 2009

**(not attached—This document is attached as Exh. 1 to the Joint Status Report filed in No. 2:08-CV-474 on March 17, 2009 (Dkt. # 46-1).**

**Defendants' Exhibit 1**

**Response Memorandum of April 24, 2009**

**Tribal Court Record-4**

***Colorado River Indian Tribes v. Water Wheel***

**Order of January 15, 2008 Denying Motions to Dismiss**

**(not attached—This document is attached as Exhibit B to Plaintiffs'
Complaint in No. 2:08-CV-474 (Dkt. #1-2)**

# Defendants' Exhibit 1

# Response Memorandum of April 24, 2009

# Tribal Court Record-5

### *Colorado River Indian Tribes v. Water Wheel*

## 1975 Lease between Water Wheel and CRIT

**(not attached—This document is attached as Exhibit A to Exhibit A of
Plaintiffs' Complaint in No. 2:08-CV-474 (Dkt. # 1-1, pp. 13-46)**

# Defendants' Exhibit 1

# To Response Memorandum of April 24, 2009

# Tribal Court Record-6

## *Colorado River Indian Tribes v. Water Wheel*

## Judgment in *United States v. Denham*

**(not attached—This document is attached as Exhibit 3 to Defendants' Opposition to Plaintiffs' Emergency Motion for TRO, filed March 13, 2008, in No. 2:08-CV-474 (Dkt. # 14-3)**

**Defendants' Exhibit 1**

**To Response Memorandum of April 24, 2009**

**Tribal Court Record-7**

*Colorado River Indian Tribes v. Water Wheel*

**Letter from Jack D. Holt, dated May 30, 1973**

LAW OFFICES

## Keller and Holt

EDGAR C. KELLER
JACK D. HOLT
STEVEN K. McGUIRE

SUITE 302
FIRST AMERICAN BUILDING
COURT AND ARROWHEAD
SAN BERNARDINO, CALIFORNIA 92401
TURNER 9-2681

| | | Rut |
|---|---|---|
| U. S. Attorney | | |
| Chief Assistant | | |
| Asst Civil Div. | | |
| Chief Crim. Div. | | |
| Asst.Tax Div. | | |
| Chief Lands Sec. | | |
| Admin. Officer | | |
| Misc.Reports Sec. | | |
| Docket Civil | | |
| Docket Criminal | | |
| Stenchmur M | | |

May 30, 1973

United States Attorney
U. S. Courthouse
312 North Spring Street
Los Angeles, California 90012

Attn: Bryan N. Freeman, Assistant U. S. Attorney

Re: U.S. vs. Denham
U.S. District Court Case No. 73-495-ALS

Gentlemen:

Following our conference a short time back, I caused my client to come to our area and I have now had an opportunity to consult with him concerning the matters that we discussed. First, I have caused a stipulation to be prepared along the lines that we discussed, and the same is enclosed herewith. I have executed the original and one copy. I request that upon your execution of it that it be filed with the court and that the copy be returned to this office.

Our discussion contemplated that we would explore the possibilities of some amicable resolution of the problem. Accordingly, I have been authorized by Mr. Denham to propose to you, by way of compromise only, that a resolution of this matter be had on the following general terms:

1. Mr. Denham would relinquish any defense that he claims to your action and would allow judgment to be taken wherein the government or its client agencies would have title free of his claim.

2. A lease would be entered into that, for the want of a better term, might be referred to as a development lease that would include, among others, the following general terms:

    a. The term of the lease would be approximately 50 years and would reflect the purpose of both parties that development efforts be taken on the property to make it suitable for recreational purposes.

*Council to decide term of lease — Rental - acreage, and Past use Damage in any settlement or Counter offer To be made to Denham or other Stipulations-*

*Try To get survey and appraisal before RDC & council -*

b. The premises would include approximately 60 acres more or less and would generally consist of an area from a spot which is near Hawker's Hoot and Holler located on Highway 95 and would extend northwesterly to a spot known as Point Consabe and which would include river frontage from Point Consabe approximately 900 feet downriver to what has been referred to as the property leased by the tribal council for housing purposes. I recognize that this is not particularly specific but, for the want of a better description at this point, I felt that the reference points herein would be helpful. If the general terms are acceptable, we could be more specific with reference to the premises involved.

c. The rental would be at the rate of $100.00 per acre per year, which I calculate to be approximately $6,000 per year and it would be payable in September of each year.

d. Denham would, for development purposes of the property, commit himself to do at least the following within the first five years:

   (1) Remove the existing structure.

   (2) Install spaces for a minimum of 100 trailers.

   (3) Create and improve at least 100 camping spaces.

   (4) Dig and install a well and modern water distribution system.

   (5) Install modern sewer hookups and electrical distribution systems.

   (6) Construct modern restroom-shower-laundry facility buildings and fully equip them.

   (7) Construct modern recreational-snack bar-store structures.

   (8) Construct a concrete boat launching facility suitable for moderate use.

   (9) Landscape and provide improved roadways upon the premises.

        e.  At the expiration or termination of the lease,
           all improvements to the realty would revert to
           the lessors.

      I felt that the foregoing terms would be the principal
ones for consideration, and I recognize that any completed lease
arrangement would, as is customary, include a number of other so-
called "housekeeping terms."

      I would appreciate it if you could explore with your
client the feasibility of entering into a lease to include the
above terms and then let me know at the earliest opportunity.  Both
Mr. Denham and myself will be available at any mutually convenient
time to meet with your clients as we discussed.  I am hopeful that
we can accomplish a resolution of our problem by such a compromise
at a very early opportunity.

                          Very truly yours,

                          KELLER AND HOLT

                          Jack D. Holt

JDH/jcs

**Defendants' Exhibit 1**

**To Response Memorandum of April 24, 2009**

**Tribal Court Record-8**

*Colorado River Indian Tribes v. Water Wheel*

**Letter from U.S. Attorney William D. Keller,
dated October 1, 1974**

United States Department of Justice

UNITED STATES ATTORNEY
CENTRAL DISTRICT OF CALIFORNIA
U. S. COURT HOUSE
312 NO. SPRING STREET
LOS ANGELES, CALIFORNIA 90012

ADDRESS REPLY TO
UNITED STATES ATTORNEY
AND REFER TO
INITIALS AND NUMBER

BNF:rw

(213) 688-5709

October 1, 1974

Airmail

Honorable Wallace H. Johnson
Assistant Attorney General
Land & Natural Resources Division
Department of Justice
Washington, D. C. 20530

     Attention: Mr. Floyd L. France
               Chief, General Litigation Section

    Re: United States v. Bert Thomas Denham,
        et al., Civil No. CV 73-495-ALS
        Your Reference: 90-2-10-520

Dear Mr. Johnson:

              OFFER IN SETTLEMENT

    The above action is one of the Colorado River
Trespass cases involving a trespass on the Cali-
fornia side (Benson Line area) of the Colorado
River Indian Reservation. The complaint was filed
on March 7, 1973. Please see the litigation report
originally sent to you by Interior for a summary of
the facts surrounding the trespass.

    The defendants have submitted an offer in
settlement whereby the parties would stipulate to
a judgment providing that the United States is
the owner of the subject property, either in its
sovereign capacity or as trustee for the Tribes.
A copy of the proposed judgment and Stipulation
(executed by the attorney for the defendants) is
enclosed. In addition, the Tribes and United
States would waive damages for the defendants'
past, illegal use of the property. Finally, the

                        LANDS - GEN. LIT. SEC.
                        General Trial Unit

Tribes would issue a lease to defendants covering a portion of the subject property. A copy of the proposed lease executed by defendants (incorporated as Water Wheel Camp, etc.) is also enclosed.

## Recommendation

We recommend acceptance of the offer in settlement. The only concession made by the Tribes is the waiver of damages for the past unauthorized use of the property. The preliminary estimate of rental damages contained in the litigation report is $7,400.00 for the trespass period of June, 1968, to September, 1972. As pointed out in the settlement memorandum in United States v. Lonesome Valley (Your No. 90-2-10-502), damages in these types of cases have been difficult to assess and prove, especially where, as in this case, there have been substantial improvements made by the defendants (e.g. United States v. Williams). While there is relatively minor risk of loss on the issue of title, the case may be delayed by similar defenses as are raised in the pending case of United States v. Rock (Your No. 90-1-10-922). Therefore, a prompt disposition of the action with an immediately effective lease providing income to the Tribes would appear preferable to litigating the case (which most likely would involve an appeal), and with speculative recovery of money damages. The proposed "semi-developmental" lease is based upon prevailing market factors, and is economically advantageous to the Tribes in our opinion.

Special Assistant United States Attorney Bryan N. Freeman has conferred with the Tribal Council, Colorado River Indian Reservation, concerning the subject settlement. The Council approved the settlement in the form proposed herein, although a formal Resolution has not been received to that effect.

Also please find enclosed two letters addressed to the Colorado River Indian Tribes from Jack Holt, counsel for defendants. The letters are formal requests for waivers of the performance and rental bonds, pursuant to discussions with Mr. Holt. Please transmit the

3.

requests to the Tribes and other proper parties for
their consideration along with the settlement pro-
posal. However, the settlement proposal is not
conditional upon the waiver of the performance
and rental bonds.

Very truly yours,

WILLIAM D. KELLER
United States Attorney

# Defendants' Exhibit 1

## To Response Memorandum of April 24, 2009

## Tribal Court Record-9

*Colorado River Indian Tribes v. Water Wheel*

**Memo from Acting Riverside Field Solicitor, USDOI,
dated April 2, 1975**



April 2, 1975

Memorandum

To      :  Superintendent, Colorado River Agency, BIA, Parker

From    :  Acting Field Solicitor, Riverside

Subject:  United States v. Bert Thomas Denham et al.,
          Civil No. 73-495-ALS

Enclosed is a copy of a Judgment entered March 5, 1975, which, in effect, holds that the United States is the owner and entitled to possession of the lands involved in the subject action and dismisses the second cause of action for damages with prejudice. This Judgment was entered as part of the settlement which includes leasing the Indian lands upon which Water Wheel Camp is located to the defendants.

To complete this settlement, Counsel for the defendants has requested that he be provided with a fully executed duplicate original of the lease between the Colorado River Indian Tribes and the Denhams. In addition, by letters of September 10, 1974, to the Tribes through your office, the defendants through their attorney formally requested waivers of the provisions of the lease which require the deposit of a rental bond (Section 9) and a performance bond (Section 10). These letters also set forth the reasons justifying the requests. It would now be appropriate to take action on these requests since the Judgment has been entered. The defendants would also like to know the name and address of the individual to whom the Denhams should direct communications with reference to the lease, particularly to whom they may submit their plans for development and approval thereof required by the terms of the lease and the name and address of the payee to whom rental payments should be made.

Mr. Denham understands that the Bureau recently caused a survey to be made of the area occupied by Water Wheel Camp. If this is so, he would like to have a copy thereof and an accurate computation of the acreage upon which rental payments would be based.

ENTERED ⬚⬚⬚ 7 1975

We have been requested to send the lease and the information called for above to defendants' Counsel. Accordingly, please send this to us as soon as possible.

Robert D. Conover
Acting Field Solicitor

James E. Goodhue
For the Acting Field Solicitor

Enclosure

cc: Area Director, BIA, Phoenix
    Associate Solicitor, Indian Affairs
        (w/cpy of encl.)
    Bryan N. Freeman, Spec. Assistant to the U.S. Attorney, L.A.
        (w/o cpy of encl.)

# Defendants' Exhibit 1

# To Response Memorandum of April 24, 2009

# Tribal Court Record-10

### *Colorado River Indian Tribes v. Water Wheel*

### Certain Exhibits attached to Deposition of Robert Johnson, February 29, 2008



# Water Wheel Recreational Area, Inc.

BOX 2900, PARKER STAR RT. — BLYTHE, CALIFORNIA 92225

(714) 922-3863



August 9, 1983

Colorado River Indian Tribes
Route 1, Box 23-B
Parker, Arizona 85344

AUG 1983

AUG 12 1983

Dear Sirs:

In order to again attract business to this area and to limit erosion as much as possible we, as holders of lease no. B-468-CR (Water Wheel Camp), are submitting for your consideration the following proposal for recreational boating on the Colorado River between Water Wheel Camp on the south and the Tuttle property on the north, a distance of approximately 2 miles.

Along this section, there is one area of approximately 2000 feet just north of Water Wheel on the Arizona bank with some erosion. The rest of this stretch of river has little or no erosion. At each end of the eroded section we will anchor a boat with a sign stating that no one should boat within 400 feet of shore. It is our experience that the wake created by the typical jet boat that is used in this area will pretty much disapate before reaching shore from 400 feet. This is primarily due to the swift current.

At the northern end of this section near the Tuttle property, we will anchor 2 boats, each with signs attached, stating that no boat may go beyond this point. On the Water Wheel boat ramp we will place a sign stating that no boat may go south. (Attached to this proposal is a drawing of the sign placement.) If there is some problem with placing boats with signs in the river, we could accomplish the same objective by placing the signs on shore.

In addition to the signs on the river, we will hand out a sheet explaing the restrictons to everyone using our ramp. Since we have the only boat ramp in this area, everyone on the river will know of these restrictions. We feel that most of the people that come to our campground will abide by these rules. The ones that do not will be asked to leave.

We would like to note that 95% of all boating occurs on Saturday and Sunday. The other five days of the week there would be almost no boating in this area.

In order to get back into business and to protect the banks from erosion, we ask that you accept this proposal by revising Ordinance No. 83-5 to open the boat ramp at Water Wheel Camp.

Respectfully,

*Robert R. Johns*

*Fredrich E. Rose*

DEPOSITION
EXHIBIT

25

Johnson 3/29/08

Exh. 25



# Water Wheel Resort
# & Recreational Area, Inc.

HCR 20 – 2900 – BLYTHE, CALIFORNIA 92225
(619) 922-3863

February 12, 1986

Colorado River Indian Tribe
Route One
Box 2313
Parker, Arizona 85434

      RE: Lease Modification
          Water Wheel

Gentlemen:

    I am seeking a modification of the existing lease with the tribe
to increase the number of trailer sites available within the park.
As it presently stands, the corporation must maintain at least
100 campsites for tents, day campers, etc. We have done this.
These campsites pay the tribe a 4% commission as they are used,
the same as trailer sites, but unlike the trailer sites are not
in full time use. Further the campsites generate a lower per
diem charge than do the trailer sites.

    We therefore propose to reduce the number of campsites by
building new trailer sites, on a one for one reduction basis,
subject to your approval. We would not eliminate a camp site
until existing trailer sites were filled and then only by the
number we felt could be filled. Thus at all times we would
have at least 200 trailer and/or camp sites as was contemplated
in the original lease agreement, in combination rather than by
separate count.

    Our projections indicate that by replacing camp sites with
trailer sites as set forth above will greatly increase the
annual revenue from the park both to us and to the tribe.

    If you have any questions, please contact us or our attorney,
Carlton L. Harpst at (714) 835-2911. Please review this letter
and give us your thoughts as soon as possible.

                        Sincerely

                        Water Wheel Resort and Recreation Area
                        by: Robert Johnson



DEPOSITION
EXHIBIT
26
Johnson 2/29/08

Exh. 26





RECEIVED APR 07 1989

# Water Wheel Resort

## C O L O R A D O    R I V E R

Colorado River Indian Tribes                    April 6, 1989
Resource and Development
Lease Agreement No. B-468-CR


   Water Wheel Resort at the present has 139 permanent trailer
sites, 34 over night sites, and 100 camping sites.

   We are proposing to change our 34 over night trailer sites
to permanent trailer sites plus adding 13 more sites.

   To do this we will need to redue the water, electric, and
sewer of our 34 over night trailer sites.  Develope remaining
leased land approximate 8 acres.  And eliminate camping sites.

   Accompanying this proposal are three plans:

        1.  Existing plan as the park is today.

        2.  Proposal of improvements.

        3.  Master site plan.

ELECTRIC:  Electricity for the park is provided by Southern
California Edison.

WATER:  The park has two wells; one pumps 150 gallons per
minute; the other, 300 gallons per minute.  With additional
trailers we will install another 300 gallon per minute well.

SEWAGE:  The park has four evaporation ponds.  For the past
ten years we have pumped into one pond for six months and
have maintained three dry ponds.  The addition of 47 more
trailers should not have any affect on our ponds.  During
the summer month we have had to add fresh water to our ponds
to maintain a constant water level.

   No anticipated density changes will occur the end result will
be an addition of 47 permanent trailer sites.  We are eliminating
34 over night sites, and 100 camping sites.

**Water Wheel Resort and Recreational Area, Inc.**
HCR 20-2900 • Blythe, California 92225 • (619) 922-3863

**DEPOSITION
EXHIBIT**
28
Johnson 2/29/08

Exh. 28

Water Wheel Resort is operated as a weekend, vacation resort.
During our busy season April thru October our permanent trailer
park has a 25% occupancy and our over night trailer sites and
camping has a 50% occupancy.  By changing to a permanent trailer
park we will decrease the amount of people that are in the park
at peak times.  But, increase the gross receipts because permanent
trailers spaces pay all year.

Our existing lease requires us to maximize the leased property
to its full potential.  And also states that the lessee agrees
that, at all times during the term of this lease, it will
diligently attempt to keep the leased premises and all part
thereof actively used.

With the completion of our master plan we will have maximized
the leased property to its fullest potential to insure the Tribe's
maximum income.

Anxiously awaitting your response.

Sincerely,

Robert R. Johnson, President
Water Wheel Resort, INC.
(619) 922-3863

# Defendants' Exhibit 1

# To Response Memorandum of April 24, 2009

# Tribal Court Record-11

### *Colorado River Indian Tribes v. Water Wheel*

# Order of February 21, 2008

**(not attached—This document is attached as Exhibit 1 to Defendants' Opposition to Plaintiffs' Emergency Motion for TRO, filed March 13, 2008 in No. 2:08-CV-474 (Dkt. # 14-1)**

# Defendants' Exhibit 1

# To Response Memorandum of April 24, 2009

# Tribal Court Record-12

### *Colorado River Indian Tribes v. Water Wheel*

# Order of March 18, 2008

**(not attached—This document is attached as Exhibit B to Plaintiffs'
Second Motion for Temporary Restraining Order, dated May 10, 2008,
in No. 2:08-CV-474 (Dkt. # 26-2)**