Water Wheel v. LaRance
No. 2:08-CV-474-PHX-DGC

# Defendants' Appendices

# Response Memorandum of April 24, 2009

**Appendix 1 – Excerpt from F.Cohen's Handbook on Federal Indian Law (2005 ed.), pp. 219-220**

**Appendix 2 – 1964 Act of Congress pertaining to Colorado River Reservation**

**Appendix 3 – Nov. 16, 1874 Executive Order signed by Pres. Grant**

**Defendants' Appendix 1**

Cohen's Handbook on Federal Indian Law (2005 ed.), § 4.01[2][e]
    -- pp. 219-220

Even as it has limited tribal authority over nonmembers, the Court has acknowledged that tribes have authority to punish tribal offenders, to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance among members.[133] This authority over members extends to the criminal law area as well as civil regulatory area. "Retained criminal jurisdiction over members is accepted by our precedents and justified by the voluntary character of tribal membership and the concomitant right of participation in a tribal government, the authority of which rests on consent. . . . With respect to such internal laws and usages, the tribes are left with broad freedom not enjoyed by any other governmental authority in this country."[134] This sort of non-territorial based jurisdiction is analogous to the principle of international law recognizing a state's authority to prescribe law to regulate the conduct of its citizens outside of the state's territory.[135] The more closely a matter is related to core tribal interests, the stronger the case is for recognition of jurisdiction based on membership in the tribe. In addition to regulation of domestic relations and probate matters, such interests would include keeping peace among tribal members in tribal communities and regulation of traditional hunting and fishing activities.[136]

### [e]—Power to Exclude Persons From Tribal Territory

The Supreme Court stated in *Worcester v. Georgia*[137] that persons were allowed to enter Cherokee land only "with the assent of the Cherokees themselves."[138] Some treaties reiterate the existence of an exclusionary power by providing methods for its exercise,[139] and successive enactments of the Trade and Intercourse Acts evidence congressional concern with the problem of trespassers on Indian lands.[140]

A tribe needs no grant of authority from the federal government to exercise the inherent power of exclusion from tribal territory, either as a government or

---

[133] Nevada v. Hicks, 533 U.S. 353 (2001).

[134] Duro v. Reina, 495 U.S. 676, 694 (1990) (citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55–56, 56 (1978)).

[135] Restatement (Third) of the Foreign Relations Law of the United States, §§ 402 (1)(c), 403(3) (1987) (main rule and exception for cases of conflict).

[136] *See* United States v. Sohappy, 770 F.2d 816, 819 (9th Cir. 1985); Settler v. Lameer, 507 F.2d 231 (9th Cir. 1974).

[137] Worcester v. Georgia, 31 U.S. 515 (1832).

[138] Worcester v. Georgia, 31 U.S. 515, 561 (1832).

[139] *See, e.g.*,Treaty with the Wyandots, Delawares, Chippawas, & Ottawas, 1785, art. 5, 7 Stat. 16.

[140] Act of Mar. 1, 1793, § 5, 1 Stat. 329; Act of May 19, 1796, §§ 2, 3, 5, 1 Stat. 469; Act of Mar. 30, 1802, §§ 2, 3, 5, 2 Stat. 139; Act of June 30, 1834, §§ 6, 9, 10, 11, 4 Stat. 729 (repealed in part 1934) (codified as carried forward at 25 U.S.C. §§ 179, 180).

as a landowner.[141] Because the exclusionary power is a fundamental sovereign attribute intimately tied to a tribe's ability to protect the integrity and order of its territory and the welfare of its members, it is an internal matter over which the tribes retain sovereignty.[142] Even when a tribe lacks civil or criminal jurisdiction over a nonmember, its officers are nonetheless empowered to eject individuals who have violated tribal law or to deliver them to other authorities.[143] A tribe would not be permitted to exclude from fee lands within its reservation persons who hold valid federal patents to such lands, however.[144] Access by reservation residents owning fee land, by invitees of those residents, and by the public on federal roads would seem to be subject to reasonable regulation by the tribe if a significant tribal interest, such as health and safety, requires that access be limited. Tribes may not exclude state officers who enter Indian country for purposes of enforcing off-reservation criminal laws against tribal members, however.[145]

### [f]—Power Over Nonmembers

Tribes have traditionally had power "over both their members and their territory."[146] Therefore, a tribe could exercise power over non-Indians and nonmember Indians who entered reservation land. This power was confirmed early on in the case of *Worcester v. Georgia*,[147] in which the Supreme Court held that Georgia law had no effect in Cherokee country even in the case of non-Indians. Nevertheless, beginning in 1978, the Supreme Court has substantially limited tribal power over nonmembers. These developments are fully analyzed in the next section.[148]

---

[141] *See, e.g.*, 55 Interior Dec. 14, 48–50 (1934) (powers of Indian Tribes). *See* Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 159 (1982); Quechan Tribe v. Rowe, 531 F.2d 408 (9th Cir. 1976); Donovan v. Navajo Forest Prods. Indus., 692 F.2d 709 (10th Cir. 1982); 1 Op. Att'y Gen. 465 (1821). As with other tribal powers, the power to exclude is subject to limitation or abolition by congressional act. *See generally* Ch. 5, § 5.02.

[142] *See* § 4.01[1]; Ch. 15, § 15.05.

[143] Duro v. Reina, 495 U.S. 676, 696–97 (1990).

[144] *See* Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation, 492 U.S. 408, 424 (1989) (opinion of White, J.); United States v. Montana, 604 F.2d 1162, 1167–1169 (9th Cir. 1979), *rev'd on other grounds*, 450 U.S. 544 (1981). Tribes are also bound by federal requirements that reservation roads constructed with federal funds be kept open to the public. *See, e.g.*, 25 C.F.R. § 162.8 (1980) (roads constructed by Bureau of Indian Affairs must remain open to public); *see also* Strate v. A-1 Contractors, 520 U.S. 438, 455 (1997) (access to state rights-of-way).

[145] Nevada v. Hicks, 533 U.S. 353, 363–364 (2001); *see also* United States v. White Mountain Apache Tribe, 784 F.2d 917 (9th Cir. 1986) (invalidating tribal court order prohibiting United States agents from entry onto reservation).

[146] United States v. Mazurie, 419 U.S. 544, 557 (1975).

[147] Worcester v. Georgia, 31 U.S. 515, 559 (1832).

[148] *See* § 4.02[3].

**Defendants' APPENDIX 2**

1964 Act of Congress

*PL 88-302, 78 Stat. 188* [S. 2111]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That, for the purpose of fixing the beneficial ownership of real property interests in the Colorado River Reservation now occupied by the Colorado River Indian Tribes, its members, and certain Indian colonists, all right, title, and interest of the United States in the unallotted lands of the Colorado River Reservation, including water rights and mineral rights therein, together with all improvements located thereon and appurtenant thereto, except improvements placed on the land by assignees or by Indian colonists, and except improvements furnished by the United States for administrative purposes (including irrigation facilities) or for the housing of Federal employees, are hereby declared to be tribal property held in trust by the United States for the use and benefit of the Colorado River Indian Tribes of the Colorado River Reservation.

**SEC. 2.**

For the purpose of this Act:

(a) "Tribes" means the Colorado River Indian Tribes of the Colorado River Reservation, with a constitution adopted pursuant to the Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U. S. C. 461 et seq.), as said constitution now exists or may hereafter be amended, consisting of a band of the Mohave Indians, the band of Chemehuevi Indians affiliated therewith, and various Indians heretofore or hereafter adopted by the Colorado River Indian Tribes.

(**b) "Colorado River Reservation" means the reservation for Indian use established by the Act of March 3, 1865 (13 Stat. 559), as modified and further defined by Executive orders of November 22, 1873, November 16, 1874, May 15, 1876, and November 22, 1915, all of which area shall be deemed to constitute said reservation.**

**SEC. 3.**

Any person of Indian blood, his spouse of Indian blood (excluding persons whose Indian blood is traceable solely to Indian tribes, bands, or groups not resident in or subject to the jurisdiction of the United States), and any dependent child of either or both of them, who is not a member of the tribes on the date of this Act, and who has settled on irrigated

lands of the Colorado River Reservation through application for a settler's land permit and who is still holding such lands by virtue of the authority of a temporary land use permit issued by or under the authority of the tribes or the Federal Government, shall be deemed to be adopted by the tribes if within two years from the date of this Act he files with the tribal council a statement accepting membership in the tribes and renouncing membership in any other tribe, band, or group. Such statement may be filed on behalf of a dependent child by either parent or by a person standing in loco parentis.

**SEC. 4.**

This Act shall become effective upon the agreement of the tribes to abandon the claims now pending in docket numbered 185 and in docket numbered 283A before the Indian Claims Commission under the Act of August 13, 1946 (60 Stat. 1049), and the dismissal of said claims by the Indian Claims Commission. Nothing in this Act shall affect or be taken into consideration in the adjudication of, or with respect to, any other claims now pending by the tribes against the United States.

**SEC. 5.**

The Act of June 11, 1960 (74 Stat. 199), as amended by the Act of September 5, 1962 (76 Stat. 428), is amended to read as follows:

"The Secretary of the Interior is authorized to approve leases of lands on the Colorado River Indian Reservation, Arizona and California, for such uses and terms as are authorized by the Act of May 11, 1938 (52 Stat. 347; 25 U. S. C. 396a et seq.), and the Act of August 9, 1955 (69 Stat. 539), as amended (25 U. S. C. 415 et seq.) including the same uses and terms as are permitted thereby on the Agua Caliente (Palm Springs), Dania, Navajo, and Southern Ute Reservations: ***Provided, however,*** **That the authorization herein granted to the Secretary of the Interior shall not extend to any lands lying west of the present course of the Colorado River and south of section 25 of township 2 south, range 23 east, San Bernardino base and meridian in California, and shall not be construed to affect the resolution of any controversy over the location of the boundary of the Colorado River Reservation: Provided further, That any of the described lands in California shall be subject to the provisions of this Act when and if determined to be within the reservation.**"

Approved, April 30, 1964.

Defendants' APPENDIX 3

Executive Order of November 16, 1874:

It is hereby ordered that a tract of country embraced within the following-described boundaries, which covers and adds to the present reservation, as set apart by act of Congress approved March 3, 1865 (Stat. at Large, vol. 13, p. 559), and enlarged by Executive order dated November 22, 1873, viz:

Beginning at a point where the La Paz Arroyo enters the Colorado River, 4 miles above Ehrenberg; thence easterly with said Arroyo to a point south of the crest of La Paz Mountain; thence with said crest of mountain in a northerly direction to the top of Black Mountain; thence in a north westerly direction across the Colorado River to the top of Monument Peak, in the State of California; thence southwesterly in a straight line to the top of Riverside Mountain, California; thence in a southeasterly direction to the point of beginning, be, and the same is hereby, withdrawn from sale and set apart as the reservation for the Indians of the Colorado River and its tributaries.

                                                                      U. S. GRANT.