WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Water Wheel Camp Recreational Area, Inc.; Robert Johnson,<br><br>Plaintiffs,<br><br>vs.<br><br>The Honorable Gary LaRance; Jolene Marshall,<br><br>Defendants. | No. CV-08-0474-PHX-DGC<br><br>**ORDER** |

Plaintiffs Water Wheel Camp Recreational Area, Inc. and Robert Johnson have been sued for eviction in an action pending in the Tribal Court of the Colorado River Indian Tribes ("CRIT"). Plaintiffs ask this Court to prevent Defendants – a judge and clerk of the Tribal Court – from proceeding with the Tribal Court action. Plaintiffs argue that the Tribal Court lacks subject matter jurisdiction under *Montana v. United States*, 450 U.S. 544 (1981).

After hearings on two requests for temporary restraining orders, extensive litigation in the Tribal Court and Tribal Court of Appeals, and considerable briefing and oral argument, the Court concludes that the Tribal Court properly exercised jurisdiction over Water Wheel, but not over Robert Johnson. The Court will grant Plaintiffs' request for declaratory relief with respect to Mr. Johnson and deny it with respect to Water Wheel.

**I.    Background.**

Water Wheel is a California corporation that operates a recreational property on the west bank of the Colorado River near Parker, Arizona. Robert Johnson is the president and

primary shareholder of Water Wheel. The recreational property is located on the CRIT reservation and was leased by Water Wheel in 1975. The 32-year lease was entered under the auspices of the Bureau of Indian Affairs ("BIA"), a division of the United States Department of the Interior.[1]

For the first 25 years, Water Wheel was required to pay rent of $100 per acre plus a percentage of gross receipts from certain business activities on the property. Dkt. #1-2 at 17-18. Thereafter, Water Wheel was to pay the "then current fair annual rental value of the leased premises" as negotiated between the parties. *Id*. at 17. Beginning in the late 1980s, the parties had various disagreements concerning Water Wheel's operations and CRIT's alleged interference with those operations. When the 25-year mark arrived, the parties were unable to agree on a fair annual rental value.

In 2001, Plaintiffs attempted to invoke BIA dispute resolution procedures under Title 25 of the Code of Federal Regulations. Among other relief, Plaintiffs sought an extension of the lease to compensate for damages allegedly caused by CRIT's actions. The BIA has never acted on Plaintiff's petition.

Paragraph 29 of the lease required Water Wheel to vacate the property "peaceably and without legal process" when the lease expired in mid-2007. *Id*. at 42. Water Wheel did not vacate the property, but remains there and continues to operate its business. Water Wheel has not paid rent to CRIT since 2005 and paid only a nominal amount in 2003 and 2004. Dkt. #59-2 at 6.

When Water Wheel refused to vacate the property, CRIT brought the eviction action in Tribal Court. Plaintiffs responded by asking this Court to enter a temporary restraining order preventing the Tribal Court action from proceeding. Following Supreme Court precedent, the Court required Plaintiffs to exhaust their jurisdictional arguments in Tribal Court and declined to rule until the Tribal Court had made a final decision. Dkt. #18.

---

[1] The United States holds legal title to Indian lands in trust for the benefit of Native Americans. 25 U.S.C. § 348. Congress has authorized the leasing of property on Indian land, but approval by the Secretary of the Interior is required. 25 U.S.C. § 415(a).

The Tribal Court held that it had jurisdiction. A January 15, 2008 order held that Plaintiffs were estopped from contesting CRIT's title to the leased land and that Plaintiffs had consented to the Tribal Court's jurisdiction when they agreed to abide by all tribal laws in paragraph 34 of the lease. Dkt. #1-3 at 2-12.[2] The Tribal Court's March 18, 2008 order held that Water Wheel and Johnson had entered into a consensual relationship with the tribe under *Montana*, and that the Tribal Court had personal jurisdiction over Johnson. Dkt. #26-3 at 2-9. On June 13, 2008, the Tribal Court granted CRIT's petition for eviction, assessed more than $4,000,000 in damages, attorneys' fees, and litigation costs against Water Wheel, and held Johnson personally liable for the damages, fees, and costs by piercing the corporate veil as a discovery sanction. Dkt. #59-2 at 6-21. The Tribal Court of Appeals affirmed all of the lower court's rulings with the exception of one damages calculation. Dkt. #46-2. Having exhausted their Tribal Court remedies, Plaintiffs now return to this Court and seek a declaration that the Tribal Court lacks jurisdiction.

## II. Legal Standard.

Federal courts have the authority to determine whether a tribal court has exceeded the lawful limits of its jurisdiction. *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 853 (1985). Legal questions are reviewed de novo. *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 904 (9th Cir. 2002). Factual findings made by tribal courts are reviewed for clear error. *FMC v. Shoshone-Bannock Tribes*, 905 F.2d 1311, 1313 (9th Cir. 1990).

## III. Reservation Status of the Land.

Many of the arguments asserted by Plaintiffs relate to the status of the land leased by Water Wheel. Plaintiffs argue, for example, that the land has never become CRIT tribal land by a valid act of Congress, that the lease is therefore void, and, alternatively, that the lease is only with the United States government and not the tribe. Quite inconsistently, Plaintiffs also assert that they are not challenging the Indian title or reservation status of the land. As

---

[2] Citations to documents in the Court's electronic docket will be to the page numbers assigned by the electronic docket, not to the page numbers in the documents themselves.

the Court noted in its order of March 25, 2009, "Plaintiffs asserted during the telephone conference, as they have in the past, that they will *not* be asking this Court to address the Indian title or reservation status of the land in question." Dkt. #49 (emphasis added); *see also* Dkt. #58. Plaintiffs' merits brief confirms that "Plaintiffs are not here contesting the reservation status of the land[.]" Dkt. #50 at 15. The Court will hold Plaintiffs to this position.[3]

For the purposes of this decision, the Court assumes that the property occupied by Water Wheel under the lease is CRIT trust land. Such an assumption not only is mandated by Plaintiffs' position in this case, it also is reasonable. The lease itself identifies CRIT as the "Lessor" of the property. Dkt. #1-2 at 16. A stipulation by the previous owners of Water Wheel resulted in a federal court judgment that the property is owned by the United States "in trust for the Colorado River Indian Tribes[.]" Dkt. #14-4 at 3. And although the relationship was sometimes contentious, Water Wheel and CRIT have dealt with each other as tenant and landlord for more than two decades. Dkt. #26-3 at 4, #1-3 at 5-7. The Court therefore will proceed with the assumption that Water Wheel occupies reservation land.[4]

**IV.    *Montana* and Its Exceptions.**

In *Montana*, the Supreme Court recognized the "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." 450 U.S. at 565. The Court identified two exceptions to this rule, circumstances where "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservation." *Id.* First, "[a] tribe may regulate, through

---

[3] Plaintiffs take this position for good reason. If the Court were to address the status of the leased land, both CRIT and the United States might well be indispensable parties. Because CRIT enjoys sovereign immunity and cannot be sued in this Court absent CRIT consent (which has not been given) or an act of Congress (which has not been cited by the parties), such a claim likely would require dismissal of this action. *See Dawavendewa v. Salt River Project*, 267 F.3d 1160, 1161-63 (9th Cir. 2002).

[4] Given this assumption, the Court will not address the land-status and lease-validity arguments in Plaintiffs' merits brief. Dkt. #50 at 11-13, 21-37.

taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id*. Second, "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

Plaintiffs contend that neither of the *Montana* exceptions allows the Tribal Court to exercise jurisdiction over them. Defendants bear the burden of showing otherwise. *Plains Commerce Bank v. Long Family Land and Cattle Company, Inc.*, --- U.S. --- 128 S. Ct. 2709, 2720 (2008). Defendants contend that *Montana*'s first exception – the consensual relationship exception – applies to both Water Wheel and Robert Johnson. Defendants advance no argument with respect to the second exception; they do not contend that Plaintiffs' conduct threatens or has a direct effect on the political integrity, economic integrity, health, or welfare of the tribe. *See* Dkt. #59 at 16-23. The Court therefore will confine its analysis to the first *Montana* exception.

The "consensual relationship" of the first exception "must stem from 'commercial dealing, contracts, leases, or other arrangements[.]'" *Atkinson Trading Company, Inc. v. Shirley*, 532 U.S. 1825, 1833 (2001) (quoting *Montana*, 450 U.S. at 565). The relationship also must have some nexus to the tribal regulation in question, in this case the Tribal Court action against Plaintiffs. *Id.*

The Court will first address application of the consensual relationship exception to Water Wheel. While discussing Water Wheel, the Court will address Plaintiffs' argument that specific terms of the lease preclude the exercise of Tribal Court jurisdiction. The Court then will consider the Tribal Court's jurisdiction over Robert Johnson. Finally, the Court will address arguments made by *amicus curiae*.

## V.   Jurisdiction Over Water Wheel.

### A.   Consensual Relationship.

The most compelling facts in support of a consensual relationship between Water Wheel and CRIT are Water Wheel's 32-year lease of tribal land and its three-year hold-over tenancy on that land. A lease is one of the classic examples of a consensual relationship cited by the Supreme Court in *Montana*. *See* 450 U.S. at 565. Indeed, it is difficult to think of a more consensual relationship than a nonmember's occupancy of tribal land under a formal written agreement with the tribe. The parties sign a written contract, the nonmember occupies tribal land, the nonmember pays rent for the privilege, and the tribe oversees the tenancy as landlord. Nor can there be any doubt that the tribal regulation in this case – the Tribal Court eviction action – bears a close nexus to the consensual relationship. The lawsuit arises from the lease relationship.

In an attempt to overcome the virtually dispositive fact of the lease, Plaintiffs argue that the property does not belong to CRIT, that the lease is not valid, and that the lease is with the United States, not CRIT. Dkt. #50 at 11-13, 21-37. As explained above, each of these arguments is foreclosed by Plaintiffs' repeated concession that this case does not challenge the Indian title or reservation status of the land.[5]

Several other facts also support the existence of a consensual relationship. As the Tribal Court found, Water Wheel engaged in "numerous commercial and business dealings and activities on the CRIT reservation," including operating a recreational mobile home resort, selling mobile homes, renting mobile homes and trailer spaces, operating a convenience store and restaurant, selling alcoholic beverages, propane, gas, and groceries,

---

[5] The fact that the land in question is on the CRIT reservation does not take this case outside the ambit of *Montana*. The Supreme Court has held that "the general rule of *Montana* applies to both Indian and non-Indian land. The ownership status of land . . . is only one factor to consider[.]" *Nevada v. Hicks*, 533 U.S. 353, 359-60 (2001); *see also Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 849 (9th Cir. 2009) (*Hicks* "held that the same principles underlying the two *Montana* exceptions also applied to civil regulation of nonmembers on lands owned by the tribe.").

renting camping spaces, and operating a business office, a boat storage facility, and a marina. Dkt. #26-3 at 4. These factual findings by the Tribal Court must be accepted unless clearly erroneous. *FMC*, 905 F.2d at 1313. Plaintiffs make no attempt to show that they are erroneous.

Plaintiffs argue that Water Wheel's relationship with CRIT was involuntary, not consensual. Plaintiff Robert Johnson has provided a declaration in which he recounts the troubled history of the lease. Dkt. #50-1 at 7-15. Johnson states that he purchased the stock of Water Wheel from Bert and Barbara Denham, the corporation's previous owners, in May of 1981.[6] The purchase included the lease signed in 1975. *Id*. Johnson states that the Denhams told him that the lease was administered by the BIA and never said anything about dealing with CRIT. From 1981 to 1986, Johnson paid rent to the BIA. In 1986, however, the BIA directed Johnson to start paying rent directly to CRIT, which he then did for almost 20 years. Johnson states that he started dealing with CRIT on matters such as building permits only when CRIT persuaded the County of Riverside, California, that CRIT had jurisdiction over the land. He asserts that CRIT similarly assumed control of electrical service to the property, ousting Southern California Edison. Johnson complains that CRIT officials treated him unfairly, denying building permits, limiting electrical power, and intimidating employees, all while favoring other riverside properties in which CRIT had a greater financial interest. *Id*. Although these assertions are largely uncontested by CRIT and will be significant in the evaluation of Tribal Court jurisdiction over Johnson, the Court does not find them dispositive on the issue of jurisdiction over Water Wheel.

The Court cannot conclude that Water Wheel's relationship with CRIT was involuntary. Documents provided by Defendants show that the previous owners of Water

---

[6] The Tribal Court found that Johnson and his wife purchased 50% of the corporation's stock in 1981 and 50% in 1985, with Johnson becoming the president of Water Wheel in 1985. Dkt. #26-3 at 6. The Court does not find these facts materially different than Johnson's declaration.

Wheel, the Denhams, were sued in 1973 in the United States District Court for the Central District of California. The plaintiff was the United States, presumably acting on behalf of CRIT. Although pleadings from the case have not been provided, letters between the litigation counsel and the stipulated judgment that resolved the case show that the lawsuit concerned the tribe's ownership of the property on which Water Wheel was operating. Dkt. ##14-4, 59-1 at 27-36.[7] The lawsuit was settled with a stipulated judgment that the "United States . . . is the owner in trust for the Colorado River Indian Tribes of the real property and premises" (Dkt. #14-4 at 2-3), and with the parties' execution of the lease (Dkt. #59-1 at 35). In other words, the Denhams settled the lawsuit by conceding that the land was held in trust for the tribe and receiving a 32-year lease in return. Water Wheel the corporation, through its owners, thus entered the lease voluntarily and with full knowledge that the land was tribal property.

The lease was signed approximately two months after the stipulated judgment was entered. By its terms, the lease is "between THE COLORADO RIVER INDIAN TRIBES, hereinafter called the 'Lessor,' . . . and WATER WHEEL CAMP RECREATION AREA, INC., a California Corporation, hereinafter called the 'Lessee[.]'" Dkt. #1-2 at 16. The first page of the lease bears the title of the BIA and states that the lease is being entered "under the provisions of the Act of April 30, 1964 (78 Stat. 186), as supplemented by Part 131, Leasing and Permitting, of the Code of Federal Regulations, Title 25 – Indians, and any amendments thereto relative to business leases on restricted Indian lands[.]" *Id*. The lease was signed by the Chairman and Secretary of the CRIT Tribal Council on behalf of the "LESSOR: COLORADO RIVER TRIBES." The lease was signed by Bert Denham, President, on behalf of the "LESSEE: WATER WHEEL CAMP RECREATION AREA, INC." *Id*. at 20. The acknowledgment of Water Wheel's signature states that the lease is

---

[7] Plaintiffs have not objected to the Court's consideration of these documents.

entered "as the free and voluntary act of said corporation." *Id.* at 21. The lease was approved by the BIA through the BIA Superintendent of CRIT. *Id.* at 22.

Given this history, there can be no doubt that Water Wheel entered the lease voluntarily and with full knowledge that the property was CRIT trust land. Water Wheel subsequently engaged in several decades of commercial activity on the land. The Court finds that Defendants have carried their burden of showing that Water Wheel and CRIT entered into a consensual relationship, and that the relationship bears a direct nexus with the Trial Court action. The first *Montana* exception applies to Water Wheel.[8]

**B.    Does the Lease Deprive the Tribal Court of Jurisdiction?**

Plaintiffs contend that the lease itself makes clear that only the Secretary of the Interior may bring an action for breach of the lease. Given this clear term of the lease, they argue, the Tribal Court cannot exercise jurisdiction over Water Wheel.

**1.    Waiver of Tribal Sovereign Powers.**

The ability of a tribe and a nonmember to contract away tribal court jurisdiction is clear. A tribe can waive sovereign immunity by contract. *Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418-19 (9th Cir. 1989). If a Tribe can waive sovereign immunity by contract, certainly it can waive tribal court jurisdiction by the same means. Furthermore, federal cases recognize that exhaustion of tribal court remedies is not necessary when a forum selection clause provides that there is no tribal court jurisdiction. *See, e.g., FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1233 (8th Cir. 1995); *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 814-15 (7th Cir. 1993). These cases necessarily assume that

---

[8] Given the Court's conclusion that *Montana*'s first exception provides a basis for Tribal Court jurisdiction over Water Wheel, the Court need not address Defendants' argument that CRIT's inherent authority to exclude nonmembers from its land provides such a basis. Dkt. #59 at 13-16. The Court will address this issue below with respect to Plaintiff Robert Johnson.

1  a forum selection clause defeats tribal court jurisdiction, rendering exhaustion of the

2  jurisdiction issue unnecessary.[9]

3  　　The Supreme Court has made clear, however, that a tribal waiver of a sovereign power

4  should not be inferred lightly. "[S]overeign power, even when unexercised, is an enduring

5  presence that governs all contracts subject to the sovereign's jurisdiction, and will remain

6  intact unless surrendered *in unmistakable terms*." *Merrion v. Jicarilla Apache Tribe*, 455

7  U.S. 130, 148 (1982) (emphasis added). The plaintiffs in *Merrion* argued that the tribe had

8  lost its power to impose a severance tax on oil and gas because the tax was not mentioned

9  in the BIA-approved mineral lease for the tribal land. The Supreme Court disagreed, finding

10  that a failure expressly to preserve that power in the lease did not constitute a waiver of the

11  power. *Id.*

12  　　The Ninth Circuit likewise has held that waiver of a tribe's sovereign power will be

13  found only if stated in "sufficiently clear contractual terms." *Arizona Public Service Co. v.*

14  *ASPAAS*, 77 F.3d 1128, 1135 (9th Cir. 1996). Citing *Merrion*, the Ninth Circuit held that the

15  Navajo Nation had, in a BIA-approved lease, made an "unmistakable waiver" of its power

16  to regulate employment practices on leased tribal land. The Court of Appeals accordingly

17  affirmed the district court's injunction against the tribe's regulatory efforts. *Id.*

18  　　In light of *Merrion* and *Arizona Public Service*, the Court must consider whether the

19  lease in this case deprives the Tribal Court of jurisdiction in sufficiently clear and

20  unmistakable terms.

21

22

23

24  　　[9] The ability of a tribe and a nonmember to agree to a dispute-resolution forum other
than tribal court was recognized by the dissent in *Plains Commerce Bank* – a dissent that

25  took a generally broad view of tribal court jurisdiction. As Justice Ginsburg explained,
"[h]ad the Bank wanted to avoid responding in tribal court or the application of tribal law,

26  the means were readily at hand: The Bank could have included forum-selection, choice-of-
law, or arbitration clauses in its agreements with the [tribal members.]" *Plains Commerce*

27  *Bank*, 128 S.Ct. at 2729 (Ginsburg, J., concurring in part and dissenting in part).

28

## 2.    Plaintiffs' Lease Arguments.

Plaintiffs' strongest argument focuses on paragraph 21 of the lease, a paragraph titled "DEFAULTS":

> Should Lessee default in any payment of monies or fail to post bond, as required by the terms of this lease, and if such default shall continue uncured for the period of Fifteen (15) days after written notice by *the Secretary* to the Lessee, or should Lessee breach any other covenant of this lease, and if the breach of such other covenant shall continue uncured for a period of sixty (60) days after written notice thereof by *the Secretary* to the Lessee, then *the Secretary* may either:
>
> > A.    Proceed by suit or otherwise to enforce collection or to enforce any other provision of this lease; or
> >
> > B.    Re-enter the premises and remove all persons and property therefrom[.]

*Id*. at 38-39 (emphasis added).

This paragraph designates the Secretary of the Interior as the individual who may give notice to Water Wheel of breaches and bring an action to enforce the terms of the lease. This authority applies not only to rent collection, but to "any other provision of this lease." *Id*. Paragraph 21 later makes a distinction for breaches of the lease caused by insolvency or bankruptcy of the Lessee: "Any action taken or suffered by Lessee as a debtor under any insolvency or bankruptcy act shall constitute a breach of this lease. In such an event *the Lessor and the Secretary* shall have the options set forth in sub-Articles A and B above." *Id*. at 39 (emphasis added). The lease thus specifically states when "the Secretary" may bring a suit to enforce the lease and when "the Lessor and the Secretary" may bring such an action. The Lessor – CRIT – is granted a role in enforcement only when the Lessee becomes insolvent or bankrupt, something that has not occurred in this case.

Although this argument carries some persuasive force, the Court concludes that paragraph 21 is not a sufficiently clear waiver of tribal sovereign power to satisfy the requirements of *Merrion* and *Arizona Public Service*. The Court reaches this conclusion for five reasons.

First and most importantly, paragraph 21 provides that the Secretary can bring an action for breach of the lease, but does not expressly prohibit CRIT from doing so. The Supreme Court has held that a tribe does not waive its sovereign powers by failing to preserve them in a lease: "It is one thing to find that the Tribe has agreed to sell the right to use the land and take from it valuable minerals; it is quite another to find that the Tribe has abandoned its sovereign powers simply because it has not expressly reserved them through a contract." *Merrion*, 455 U.S. at 146. "To presume that a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power in a commercial agreement turns the concept of sovereignty on its head, and we do not adopt this analysis." *Id*. at 148.

Second, paragraph 22 of the lease expressly recognizes that CRIT, as Lessor, may bring an action against Water Wheel. It reads:

> If action be brought by Lessor in unlawful detainer for rent or any sums of money due under this lease, or to enforce performance of any of the covenants and conditions of this lease, and Lessor prevails in said action, the Lessee shall pay reasonable attorneys fees to Lessor, to be fixed by the court as part of the costs in any such action.

Dkt. #1-2 at 41. Plaintiffs seek to limit the effect of this paragraph by arguing that it operates only in the narrow sphere preserved for the tribe in paragraph 21 – when Water Wheel becomes insolvent or bankrupt. The Court cannot agree. Paragraph 22 specifically mentions "unlawful detainer," while paragraph 21 does not. An action for unlawful detainer is separate from a breach-of-contract claim and seeks "to return a wrongfully held tenancy (as one held by a tenant after the lease has expired) to its owner." Black's Law Dictionary at 1574 (8th ed.). Paragraph 22 thus contemplates an action different from the breach-of-lease actions addressed in paragraph 21 and cannot reasonably be confined to a mere subset of paragraph 21.[10]

---

[10] Plaintiffs rely on paragraph 29 to argue that the only remedy available in the event of Water Wheel's holdover is an action for breach of the lease. Requiring Water Wheel to vacate the property promptly on expiration of the lease, as paragraph 29 requires, is not the

Third, paragraph 21 mentions only breaches of the lease; it does not address tort claims that might arise from the landlord-tenant relationship. CRIT asserted a tort claim against Plaintiffs in the Tribal Court. Nothing in paragraph 21 suggests that such a claim may be asserted only by the Secretary.

Fourth, paragraph 21 is permissive, not mandatory. It states that the Secretary "may" bring a suit or re-enter the premises in the event of a breach. If the Secretary were being recognized as the only person on earth who could act when Water Wheel breaches the lease or wrongfully holds over, one would expect that the Secretary's obligation to act would be mandatory. The fact that paragraph 21 is permissive suggests that it merely is a recognition of what the Secretary may do in the event of a breach, not the establishment of the sole means for addressing legal issues arising from the lease.

Fifth, paragraph 23 of the lease gives CRIT a role in enforcement actions. It concerns holding over by Water Wheel and reads as follows:

> Lessee agrees to remove all property removable under the terms of this lease prior to the termination or expiration of this lease; provided, however, that if this lease is terminated prior to the expiration date, Lessee shall have thirty (30) days after the termination to remove all such property. Should the Lessee fail to remove any such property within the specified time, Lessor shall have the right to remove it and dispose of it or have it stored all at Lessor's expense.

Dkt. #1-2 at 41. If actions arising from wrongful holding over by Water Wheel were the exclusive province of the Secretary, the lease would not grant CRIT a role in the process.[11]

In sum, the Court concludes that paragraph 21 of the lease does not waive CRIT's power to commence the Tribal Court action "in unmistakable terms" as required by *Merrion*

---

same as providing that all other remedies for a wrongful holdover are foreclosed. The Court reads paragraph 29 as imposing an additional obligation on Water Wheel, not as foreclosing other CRIT remedies.

[11] Plaintiffs argue that paragraph 23 limits the tribe's role to situations where the BIA has terminated the lease before its expiration date. The Court, however, reads the last sentence of paragraph 23 as referring to the entire paragraph, not simply to the proviso of the next-to-last sentence. Dkt. #1-2 at 41.

- 13 -

or in "sufficiently clear contractual terms" as required by *Arizona Public Service*. The Tribal Court's power has not been waived in the lease.[12]

What is more, the lease and paragraph 21 expired in mid-2007, before the Tribal Court action was commenced. Although lease terms generally continue to govern the parties' relationship during a holdover period, *see* Restatement (Second) of Property (Landlord and Tenant) § 14.7 (1977), the parties in this case expressly provided otherwise. Paragraph 23 provides that "[h]olding over by the Lessee after the termination or expiration of this lease shall not constitute a renewal or extension thereof *or give the Lessee any rights hereunder* or in or to the leased premises." Dkt. #1-2 at 41 (emphasis added). Thus, even if paragraph 21 could be read as granting Plaintiffs the right to be free from a Tribal Court action while the lease was in existence, paragraph 23 makes clear that Plaintiffs could not claim that right after the lease expired.

**C.    Plaintiffs' Regulation-Based Argument.**

Plaintiffs argue that the Tribal Court's assertion of jurisdiction conflicts with regulations promulgated by the BIA. Dkt. #50 at 18. Plaintiffs characterize this as a preemption argument. The thrust seems to be that BIA regulations leave no room for the tribe's exercise of jurisdiction in this case. The Court does not agree.

The BIA regulations in question specify what the BIA will do in the event of lease violations; they do not expressly limit what the tribe can do. *See* 25 C.F.R. §§ 162.613-

---

[12] Plaintiffs also argue that the Tribal Court action is based on a 2006 tribal ordinance to which they never consented as required by paragraph 34 of the lease. Paragraph 34 requires Plaintiffs' consent, however, only if the new ordinance "shall have the effect of changing or altering the express provisions and conditions of this lease[.]" Dkt. #1-2 at 43. Because the Court does not find that the lease makes the Secretary the exclusive enforcing authority, the eviction ordinance does not change or alter an express provision of the lease and therefore does not require Plaintiffs' written consent.

162.623.[13]   The Court therefore does not read the regulations as limiting Tribal Court authority that otherwise is available under *Montana*.

Moreover, the regulations recognize that Indian tribes may invoke "remedies available to them under the lease."  25 C.F.R. § 162.619(a)(3); *see also* 25 C.F.R. § 162.612(a) ("A lease of tribal land may provide the tribe with certain remedies in the event of a lease violation . . . .").  As explained above, paragraph 22 of the lease recognizes that CRIT may bring a legal action for "unlawful detainer" and "to enforce any of the covenants and conditions of this lease."  Dkt. #1-2 at 41.  Given this provision, the Court cannot conclude that the regulations preclude the tribe from initiating an action in Tribal Court.

### D.   Water Wheel Conclusion.

Water Wheel entered into a consensual relationship with CRIT and therefore is subject to Tribal Court jurisdiction under *Montana*'s first exception.  Provisions of the lease and the applicable regulations do not require a different conclusion.

## VI.   Tribal Court Jurisdiction Over Robert Johnson.

### A.   Consensual Relationship.

The consensual relationship question is more difficult with respect to Robert Johnson.  The Tribal Court made several factual findings in support of its jurisdiction over Johnson.  First, the court noted Water Wheel's commercial dealings with CRIT.  Dkt. #26-3 at 5.  It then made the following factual findings with respect to Johnson:  he acquired the stock of Water Wheel and became its president; he hired, paid, and supervised Water Wheel employees on the leased property; he met approximately 15 times with CRIT's commercial manager, 50 to 75 times with CRIT's building and safety office, and 15 times with CRIT's

---

[13] The regulations at 25 C.F.R. §§ 162.100 and 162.600 are successors to 25 C.F.R. § 131, the regulation incorporated into the lease.  Although these new regulations were promulgated in 2001, long after the lease was executed, the lease incorporates by reference the BIA regulations and "any amendments thereto relative to business leases on restricted Indian lands."  Dkt. #1-2 at 16.  The 2001 regulations are therefore deemed to be part of the lease and are relevant to the Court's decision.  Both sides have cited extensively to the 2001 regulations in this litigation.

hydrology engineer to discuss Water Wheel operations; he submitted several written requests for additional development at the property; he negotiated monthly and annual rent with CRIT; and he continues to operate the business on CRIT land. *Id*. at 7.[14]

Johnson does not dispute these factual findings, but he does dispute that his contacts with CRIT were consensual. Johnson's declaration swears that the Denhams told him rent would be paid to the BIA and building supervision on the property would be performed by the County of Riverside inspectors. Johnson further asserts that he was to obtain electrical power from Southern California Edison. These assertions are supported by the lease. Section IV of the lease calls for rent "payments to be made to the Bureau of Indian Affairs." Dkt. #1-2 at 17. Paragraph 5 of the Addendum (which was attached to the lease when it was executed in 1975) states that plans and designs for buildings on the property would be "approved by the State of California and Riverside County." *Id*. at 27. Paragraph 14 of the Addendum recognizes that Water Wheel will have the right to enter into power agreements with public utilities such as Southern California Edison. *Id*. at 33. Johnson further swears that he paid rent to the BIA until the BIA told him to begin making payments to CRIT in 1986 (Dkt. #50-1 at 8), that he obtained building permits from Riverside County until CRIT intervened in 1983 and took over inspection and permitting at the site (*id*. at 9), and that he dealt with Southern California Edison to obtain power for the property until CRIT intervened (*id*.). While these assertions do not change the fact that Water Wheel's lease was with CRIT, they do provide support for Johnson's claim that *he* did not intentionally enter into a consensual relationship with the tribe.

---

[14] The Tribal Court also found that Johnson "is in fact a party to the Lease." *Id*. In support of this significant finding, the court cited to "all of the above findings of fact." *Id*. This finding is clearly erroneous. The lease was executed in 1975, several years before Johnson acquired any interest in Water Wheel. Johnson did not sign the lease or any amendment to the lease. The parties have identified no other basis for concluding that Johnson personally is a party to the lease.

1      Johnson protested CRIT's interference by writing letters to the BIA in 1985, twice in

2   1989, and five times in 2000.  *Id*. at 10-11.  Johnson wrote letters of protest to CRIT in 1989

3   and 1990.  *Id*. at 11-12.  In 2001, Johnson and Water Wheel filed a Request for Action with

4   local BIA officials, asserting that Water Wheel was being treated improperly by CRIT and

5   had suffered more than $900,000 in damages.  *Id*. at 12-13.  As already noted, the BIA never

6   acted on the Request.  *Id*.

7      Defendants have presented no evidence to contest Johnson's factual assertions.  They

8   rely instead on the Tribal Court's factual findings.  Although the Tribal Court found that

9   Johnson had extensive contacts with CRIT, it did not address the voluntariness of those

10  contacts.  *See* Dkt. #26-3 at 5-7.  Defendants have the burden of proof with respect to

11  *Montana*'s consensual relationship exception.  *Plains Commerce Bank*, 128 S. Ct. at 2720.

12  The Court concludes that they have not shown that Johnson's contacts with the tribe were

13  voluntary.[15]

14      The question the Court must answer, then, is whether a nonmember's extensive but

15  largely involuntary dealings with a tribe satisfy the consensual relationship exception.  The

16  parties have cited no case on point and the Court has found none.  The Supreme Court

17  recently has made clear, however, that the *Montana* consensual relationship exception is

18  satisfied only when a nonmember has consented to tribal jurisdiction.  As the Court explained

19  in *Plains Commerce Bank*, a nonmember may not be subjected "to tribal regulatory authority

20  without commensurate consent."  128 S. Ct. at 2724.  The Court explained that "nonmembers

21  have no part in tribal government – they have no say in the laws and regulations that govern

22  tribal territory.   Consequently, those laws and regulations may be fairly imposed on

23  nonmembers only if the nonmember has consented, either expressly or by his actions."  *Id*.

24  _____

25      [15] CRIT does present three letters in which Johnson, acting on behalf of Water Wheel,
    proposed to the tribe that additional commercial development be permitted on the property.
26  Dkt. #59-1 at 38-41.  The Court does not find these letters inconsistent with Johnson's
    assertion that he was forced to deal with the tribe and tried repeatedly, yet unsuccessfully,
27  to obtain permission for additional development.

28

The question is whether Johnson – not Water Wheel – entered into a consensual relationship with CRIT. Stated differently, have Defendants, who bear the burden of proving a consensual relationship, shown that Johnson personally chose to enter into a consensual relationship with the tribe. The Supreme Court has made clear that mere physical presence on reservation property is not enough. *See Nevada v. Hicks*, 533 U.S. 353 (2001). And while it is true that Johnson acquired a corporation that had a lease with the tribe and therefore could be charged with knowing that the corporation may be subject to tribal regulation, he did so, the unrebutted evidence suggests, understanding that *he* would be dealing largely with the BIA, Riverside County, and Southern California Edison. Such an understanding by Johnson cannot fairly be characterized as his personal consent to the tribe's jurisdiction. The Court concludes that Defendants have not presented evidence sufficient to show that Johnson personally entered into a consensual relationship with the tribe.

The Supreme Court has stated that *Montana*'s exceptions are limited and should not be construed broadly. *Plains Commerce Bank*, 128 S. Ct. at 2720. Although this is a close question, the Court concludes that Defendants have not met their burden of showing that *Montana*'s consensual relationship exception applies to Robert Johnson.[16]

**B.      Other Johnson Issues.**

Defendants assert that the Tribal Court has jurisdiction over Johnson based on paragraph 34 of the lease. Paragraph 34 provides that Water Wheel and its "agents" and "employees" will abide by tribal laws and regulations. Dkt. #1-2 at 43. Nothing in the paragraph suggests, however, that Water Wheel is agreeing that its agents and employees personally are subject to Tribal Court jurisdiction. Nor could Water Wheel enter into such an agreement on behalf of Johnson, a future owner who was not affiliated with the

---

[16] Because the Tribal Court decision merely recounted Johnson's contacts with the tribe and did not address the voluntariness of those contacts (Dkt. #26-3 at 5-7), there is no factual finding of voluntariness to which the clearly erroneous standard can be applied.

corporation when the lease was signed. Defendants have presented no evidence that Johnson somehow authorized Water Wheel to consent to jurisdiction on his behalf.

As a discovery sanction, the Tribal Court pierced the corporate veil and held Johnson personally liable for damages caused by Water Wheel. Dkt. #59-2 at 17-21. This sanction was based on Johnson's failure to respond to discovery in the Tribal Court. *Id.* Piercing the corporate veil was used by the Tribal Court to impose liability, not to satisfy *Montana*'s first exception or establish Tribal Court jurisdiction. *See* Dkt. #59-2 at 17-18. Defendants do not contend that it provides a basis for jurisdiction over Johnson.

## C. CRIT's Inherent Power to Exclude.

Tribes have inherent power to exclude nonmembers from tribal lands. *See Plains Commerce Bank*, 128 S. Ct. at 2723; *Duro v. Reina*, 495 U.S. 676, 696 (1990); *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 333 (1983). Defendants argue that this inherent power provides a basis for jurisdiction over Johnson independent of *Montana*. For two reasons, the Court does not agree.

First, the Supreme Court has made clear that the *Montana* framework governs a tribe's exercise of its inherent sovereign powers, including its power to exclude nonmembers from tribal land. In *Plains Commerce Bank* the Court noted that tribes retain limited sovereign power to govern themselves and regulate their internal affairs, explaining that "[t]he regulations we have approved *under Montana* all flow directly from these limited sovereign interests." 128 S.Ct. at 2723 (emphasis added). The Court then provided examples of the sovereign powers "approved under *Montana*," the first of which was the power relied on by Defendants – "[t]he tribe's 'traditional and undisputed power to exclude persons' from tribal land." *Id.* (quoting *Duro*, 485 U.S. at 696). Later, referring to all the examples it had cited, the Court explained that "these sorts of regulations are permissible under *Montana*[.]" *Id.* The Court also observed that the tribal regulation permitted under *Montana* "must stem from the tribe's inherent sovereign authority to set conditions on entry [i.e., the power to exclude], preserve tribal self-government, or control internal relations." *Id.* at 2724. *Plains Commerce*

*Bank* thus suggests that a tribe's inherent power to exclude nonmembers is one of the powers regulated by the *Montana* framework, not a power independent of it.

The Supreme Court provided a similar discussion of *Montana*'s sweep in *Strate v. A-1 Contractors*, 520 U.S. 438 (1997). *Strate* characterized *Montana* as "the pathmarking case concerning tribal civil authority over nonmembers." *Id.* at 445. *Strate* explained that "[w]hile *Montana* immediately involved regulatory authority, the Court broadly addressed the concept of 'inherent sovereignty'" and "delineated – in a main rule and exceptions – the bounds of the power tribes retain to exercise 'forms of civil jurisdiction over non-Indians.'" *Id.* at 453. The Supreme Court thus made clear that *Montana*'s framework encompasses a tribe's inherent sovereign powers over nonmembers.

A case cited by Defendants, *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985), supports this conclusion. The White Mountain Apache Tribe excluded Hardin, a nonmember, from the reservation based on his federal criminal conviction for concealment of stolen property. *Id.* at 478. In upholding the exclusion, the Ninth Circuit noted that *Montana* permitted tribes to exercise "'*some* forms of *civil* jurisdiction over non-Indians on their reservation.'" *Id.* (quoting *Montana*, 450 U.S. at 565) (emphasis in *Hardin*). The Ninth Circuit made clear that the tribe's exclusion of Hardin satisfied both *Montana* exceptions. It concluded that "[t]he intent of the tribal ordinance is merely to remove a person who 'threatens or has some direct effect on the . . . health or welfare of the tribe,'" *id.* at 479, a direct quotation of *Montana*'s second exception. *See Montana*, 450 U.S. at 566. The Court then found that "[w]hen a nonmember has entered into a consensual relationship with the Tribe or its members the Tribe retains 'inherent power to exercise civil authority over the conduct of [the nonmembers] on fee lands within its reservation.'" *Id.* (quoting *Montana*, 450 U.S. at 565-566). This is a direct quotation of *Montana*'s first exception. The

*Hardin* decision thus supports the conclusion that a tribe's power to exclude must be exercised within the *Montana* framework.[17]

Second, even if the Tribal Court action could be justified on the basis of the tribe's power to exclude nonmembers, the tribal lawsuit in this case seeks to do much more. The Tribal Court held Johnson liable for breach of the lease, failure to pay rent, and the tort of intentional interference with prospective economic advantage. Dkt. #59-2. The Tribal Court found Johnson to be the alter ego of Water Wheel and personally liable for all of Water Wheel's liabilities, including attorneys' fees and costs. *Id.* Such a sweeping imposition of liability does far more than exclude Johnson from tribal land.

In sum, *Plains Commerce Bank*, *Strate*, and *Hardin* compel the conclusion that a tribe's power to exclude nonmembers must be exercised within the *Montana* framework. Because the Tribal Court in this case had no authority over Johnson under *Montana*'s first exception and Defendants do not contend that the second exception applies, no basis for tribal jurisdiction over Johnson exists. Nor could the power to exclude provide a basis for the broad imposition of damages, attorneys' fees, and alter ego liability attempted in this case.[18]

---

[17] Defendants cite *Alire v. Jackson*, 65 F. Supp. 2d 1124, 1128 (D. Ore. 1985), a case in which a nonmember was excluded from the Warm Springs Indian Reservation after being charged with child neglect. The nonmember sought a writ of habeas corpus in federal court. The district court concluded that the writ could issue only if the tribal court's exclusion was criminal in nature. Because the district court found the exclusion to be a civil action under the tribe's inherent power to exclude nonmembers, it denied the writ. *Id.* The court did not address *Montana* or its exceptions. Given the Supreme Court and Ninth Circuit suggestions that a tribe's power to exclude is governed by *Montana*, the decision in *Alire* provides scant support for concluding otherwise.

[18] The Court concludes only that the tribe's power to exclude nonmembers does not provide a basis for the Tribal Court action. The Court does not address whether or how the tribe might otherwise exercise this power. Specifically, the Court expresses no view on whether CRIT may exclude Johnson from tribal land.

## D. Johnson Conclusion.

Defendants have not carried their burden of proving that Robert Johnson entered into a consensual relationship with CRIT. Paragraph 34 of the lease and the tribe's inherent power to exclude nonmembers do not provide a jurisdictional basis for the Tribal Court action. The Tribal Court therefore may not exercise jurisdiction over Johnson.

## VII. Amicus Briefs.

With the Court's permission, CRIT filed amicus briefs on the merits of this action. Dkt. ##70, 71. CRIT urges the Court to dismiss this action because CRIT is an indispensable party under Federal Rule of Civil Procedure 19 and has not been sued. CRIT makes several arguments. The Court finds none of them persuasive.

CRIT argues that it is an indispensable party because Plaintiffs have challenged CRIT's ownership of the leased land and the validity of the lease. Dkt. #70. As noted above, however, the Court will not address the title of the land or the validity of the lease. The Court has assumed for purposes of this action that the land belongs to the tribe and the lease is valid.

CRIT argues that it is an indispensable party because it has an interest in preserving the Tribal Court judgment in this case. In response to a different tribe's argument that it was an indispensable party, the Ninth Circuit held that the "tribe does not have 'a legally protected interest in maintaining a court system.'" *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002) (quoting *Yellowstone County v. Pease*, 96 F.3d 1169, 1173 (9th Cir. 1996)). *A fortiori* the tribe does not have a legally protected interest in a particular judgment of that court system. Furthermore, if the judgment against Johnson was entered without jurisdiction, it is "null and void." *Plains Commerce Bank*, 128 S. Ct. at 2716. The tribe has no legally protected interest in a null and void judgment.

CRIT argues that it has an interest in protecting tribal sovereign immunity, but this action does not challenge CRIT's sovereign immunity. It concerns Tribal Court jurisdiction. It is well settled that "federal courts are the final arbiters of federal law, and the question of

tribal court jurisdiction is a federal question." *FMC*, 905 F.2d at 1314. As the Ninth Circuit further observed, "holding that a tribe is a necessary party 'whenever [its] jurisdiction is challenged would lead to absurd results.'" *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002) (quoting *Yellowstone*, 96 F.3d at 1173).

Finally, CRIT asserts that it can enforce the Tribal Court judgment against Johnson regardless of this Court's ruling. Dkt. #70 at 11. As the Supreme Court has explained, however, a tribal court decision entered without jurisdiction is null and void. *Plains Commerce Bank*, 128 S. Ct. at 2716. The tribe cannot enforce a null and void judgment.

**IT IS ORDERED:**

1. Plaintiffs' request for declaratory relief is **denied** with respect to Plaintiff Water Wheel Camp Recreational Area, Inc., and **granted** with respect to Plaintiff Robert Johnson. The CRIT Tribal Court lacks subject matter jurisdiction over Johnson, and the judgment against him in Case No. CV-CO-2007-0100 is null and void. Defendants are directed to vacate the judgment and to cease any litigation concerning Robert Johnson personally.

2. The Clerk shall terminate this action.

DATED this 22nd day of September, 2009.

David G. Campbell
United States District Judge

- 23 -